HERMAN B. FERGUSON, Respondent, *v.* RAYMOND H. CHUCK and Others, Appellants.

First Department, January 14, 1921.

**Sales — action by buyer on theory that rescission constituted breach of contract by defendants — question of fact as to whether defendants justified in rescinding under Personal Property Law, section 126, subdivision 2 — compromise verdict — new trial.**

In an action by a buyer to recover damages for the breach of a contract to sell and deliver goods, it appeared that defendants notified the plaintiff that owing to his failure to pay at maturity bills for goods delivered they would make no further shipments and would rescind the contract; that the plaintiff did not either prior or subsequent to the rescission tender cash payments and demand the delivery of the balance of the order or any part thereof, but brought this action on the theory that the rescission constituted a breach of the contract by the defendants.

*Held,* that the evidence presented a question of fact as to whether the defendants were justified under subdivision 2 of section 126 of the Personal Property Law in rescinding the contract;

That a compromise verdict having been awarded for less than the damages shown by the uncontroverted evidence, the judgment for the plaintiff must be reversed and a new trial granted.

SMITH, J., dissents in part.

APPEAL by the defendants, Raymond H. Chuck and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 27th day of March, 1920, upon the verdict of a jury, and also from an order entered in said clerk's office on the 13th

day of April, 1920, denying defendants' motion for a new trial made upon the minutes.

*Joseph M. Proskauer* [*Arthur L. Davis* with him on the brief], for the appellants.

*Charles Goldzier*, for the respondent.

Laughlin, J.:

This is an action by a buyer to recover damages for a breach of a contract to sell and deliver goods. Plaintiff was engaged, among other things, in manufacturing shirts at McKeesport, Penn., under the name of H. B. Ferguson Company, and the defendants, under the name of Chuck, Davis & Co., were engaged in business as converters and jobbers in cloth and their principal place of business was in the city of New York. On the 22d day of November, 1917, plaintiff placed an order in writing with the defendants for the purchase of " about " 45,000 yards of " Fast Black " sateen at twenty-one and one-half cents per yard and " about " 30,000 yards of " Fast Sulphur Khaki shade " sateen at twenty-two and one-half cents per yard. The order for the 30,000 yards was modified by mutual consent by changing 28,000 yards to black sateen, the same as the order for the 45,000 yards, but the purchase price of the 28,000 yards was changed to twenty-two and one-eighth cents per yard. Defendants, on invoices dated November 22, 1917, March 14, March 25, and April 8, 1918, delivered 24,612 yards but failed and refused to deliver the remaining 50,388 yards.

The contract provided with respect to the time of deliveries as follows: "About April, 1918. About May, 1918, sooner if possible."

With respect to the terms of payment, the contract provided as follows: " 2/10/60 F. O. B. New York City." This, it was conceded, meant that payments were to be made within seventy days at a discount of two per cent. The contract which was evidenced by the written order provided that partial deliveries were to be paid for at the contract rates upon maturity of the bills therefor, and that the order was given and accepted subject to a limit of credit determinable at any time by the defendants. Payment for the first and third invoices of goods

delivered was due June 10, 1918, but was not made until June seventeenth. Payment for the second invoice was due May twenty-third and was not made until May twenty-fourth and payment for the fourth was due June seventeenth and not made until July eighteenth. The defendants manifested dissatisfaction with the plaintiff's failure to make prompt payments and notified him that they were obliged to limit his credit at any one time to $4,000. The plaintiff attributed the delay in paying the amounts of the invoices which matured on June tenth to a fire at his factory on June third and to the destruction of the invoices and a check which had been drawn therefor, and to the failure of the defendants to forward duplicate invoices pursuant to his letters asking therefor; but the defendants denied that they received the letters. Plaintiff having failed to pay for the fourth invoice which became due on June seventeenth, defendants drew a draft on the plaintiff at Wheeling, W. Va., where he had an office, and it was returned with the notation that he did not pay drafts at the Wheeling office but at the McKeesport office. Thereupon defendants drew a draft on him at McKeesport but he did not pay it. They then placed the claim in the hands of a mercantile agency for collection, and on notice from the agency he paid the amount on July eighteenth. On the 23d of July, 1918, defendants notified the plaintiff by mail that, owing to his failure to pay at maturity bills for goods delivered, rendering it necessary for them to draw drafts, which were dishonored and to resort to a collection agency, they would make no further shipments of merchandise and rescind the contract. The plaintiff did not, either prior or subsequent to the rescission, tender cash payments, and demand the delivery of the balance of the order or any part thereof. He brought this action on the theory that the rescission constituted a breach of the contract by the defendants. The order at the outset provided that it was not subject to cancellation " except for failure to deliver in accordance with conditions of purchase," but it was further therein provided that the purchaser should have no right to cancel the contract or any part thereof. These are the only express provisions contained in the order with respect to the cancellation thereof. Defendants claimed that they were justified in rescinding under subdivision 2 of section 126 of the

Personal Property Law (as added by Laws of 1911, chap. 571), owing to the failure of the plaintiff to pay for the goods delivered in accordance with the terms of the contract. That statute, so far as here material, provides that where there is a contract to sell goods to be delivered by stated installments, which are to be separately paid for, and the buyer neglects or refuses to pay for one or more installments, "it depends in each case on the terms of the contract and the circumstances of the case whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken." The defendants, doubtless influenced by a rising market, were not entirely frank with the plaintiff, and after extending to him a running credit of $4,000, determined to withdraw all credit, but did not give him notice so that he might have tendered payment in advance. The evidence presented a question of fact as to whether the defendants were justified under the statute in rescinding the contract. (See *Helgar Corporation* v. *Warner's Features,* 222 N. Y. 449.) We do not deem it necessary to set forth the evidence presented in behalf of the respective parties on that issue. Their claims with respect thereto have been sufficiently outlined. Although the jury rendered a verdict in favor of the plaintiff, we think the verdict indicates that the jurors were not in full accord in favor of the plaintiff on that issue of fact, and that it was a compromise verdict. The uncontroverted evidence shows that, at the time of the rescission, the market price of the goods was thirty-five or thirty-five and one-half cents per yard. The only evidence on this point was offered by the plaintiff, and while it was being offered the attorney for the defendants stated, in substance, that there was no dispute but that the market price advanced from the time the contract was made to thirty-five or thirty-five and one-half cents at the time the defendants rescinded the contract; and that was acquiesced in by the attorney for the plaintiff, who desisted from offering further proof. Plaintiff's general manager was permitted without objection to compute plaintiff's damages as the difference between the contract price and the market price of thirty-five

cents at the time of the rescission of the contract, but in so doing he at first erroneously took the original contract price of twenty-one and one-half cents per yard as applicable to all instead of the modified price of twenty-two and one-eighth cents per yard for the 28,000 yards. He subsequently made another computation, correcting this error and giving the damages without interest as $6,627.38 to which, subject to correction, $690 was added as interest, making the entire claim $7,317.38. The court in submitting the case to the jury stated, in effect, that the market price at the time of the alleged breach was not in dispute, and that if they came to the question of damages, it would only be necessary for them " to take the two figures and draw your own conclusions and state the result and find the amounts; " and later on instructed them that if they found in favor of the plaintiff, their verdict should be for such sum as they determined upon. These were the only references to damages in the charge in chief. At the close of the charge the attorney for the plaintiff stated, in substance, that there was no dispute with respect to the amount of damages if the plaintiff was entitled to recover, and requested that the court give the figures to the jury, to which the court replied: " Yes, the plaintiff claims that the amount and interest subject to correction is $7,317.38." There was no suggestion in behalf of either party that there was any basis upon which the jury could render a verdict for less than that amount. The words " subject to correction " in the instructions given, manifestly refer to a correction with respect to the interest, for there was no sworn computation with respect to the amount of the interest. The interest was stated by the plaintiff's attorney to be $690, and subject to correction by the defendants, as already stated, it was added to the amount of the damages shown by the testimony. Instead of rendering a verdict for the damages as shown, the jury awarded the plaintiff only $4,500, which is less than two-thirds of the damages shown by the uncontroverted evidence and is approximately on the basis of a difference of nine cents per yard between the contract and the market prices, although the uncontroverted evidence showed the difference to be about thirteen cents per yard. There being no basis in the evidence for a compromise with respect to *the amount* of the damages, the fair inference is

that the jurors were unable to agree on the main issue as to whether the defendants were warranted in rescinding the contract, and compromised their differences by allowing the plaintiff to recover part only of the increase in the market price of the goods over the contract price thereof. In such circumstances, the rule is well settled that the verdict will be deemed a compromise verdict and will not be permitted to stand. (*Myers* v. *Myers,* 86 App. Div. 73; *Zeilian* v. *Beggs & Co.,* 153 id. 687; *Messmer* v. *Boettger Silk Finishing Co.,* 160 id. 519; *Clark* v. *Foreign Products Co., Inc.,* 194 id. 284.) It follows that the judgment and order should be reversed and a new trial granted, with costs to the appellants to abide the event.

CLARKE, P. J., PAGE and MERRELL, JJ., concur; SMITH, J., votes for reversal of the judgment and dismissal of the complaint.

Judgment and order reversed and new trial ordered, with costs to appellants to abide event.