### F. A. D. ANDREA, Inc., v. DODGE.

(Circuit Court of Appeals, Third Circuit. November 19, 1926.)

No. 3464.

1. **Sales ⬀166(5)—"Bulk," as used in provision of Uniform Sales Act, denotes goods, as distinguished from sample (Uniform Sales Act Pa. § 14 [P. L. 543; Pa. St. § 19662]).**

"Bulk," as used in Uniform Sales Act Pa. § 14 (P. L. c. 543; Pa. St. § 19662), providing that if "sale be by sample, as well as by description, it is not sufficient if the bulk of the goods corresponds with the sample, if the goods do not also correspond with the description," denotes goods, as distinguished from sample.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bulk.]

2. **Sales ⬀166(5)—"Goods," used in phrase "bulk of goods," held an appositional genitive, defining "bulk" (Uniform Sales Act Pa. § 14 [P. L. 543; Pa. St. § 19662]).**

"Goods," as used in Uniform Sales Act, Pa. § 14 (P. L. 543; Pa. St. § 19662), referring to "bulk of the goods," is an appositional genitive defining "bulk."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Goods.]

3. **Sales ⬀166(5)—"Bulk of Goods" means same as "goods," as used in Uniform Sales Act (Uniform Sales Act Pa. § 14 [P. L. 543; Pa. St. § 19662]).**

In Uniform Sales Act Pa. § 14 (P. L. 543; Pa. St. § 19662), providing, if sale be by sample as well as by description, "it is not sufficient if the bulk of the goods corresponds with the sample, if the goods do not also correspond with the description," Legislature did not intend to distinguish between "bulk of goods" and "goods" themselves.

4. **Sales ⬀166(5)—Instruction treating "bulk," as used in Uniform Sales Act, as meaning sum less than all goods sold, held erroneous (Uniform Sales Act Pa. §§ 14, 16 [P. L. 543; Pa. St. §§ 19662, 19664]).**

In action for breach of contract for radio cabinets sold by description and sample, instruction predicated on Uniform Sales Act Pa. §§ 14, 16 (P. L. 543; Pa. St. §§ 19662, 19664), which treated "bulk" as meaning something less than all the goods sold, held erroneous.

5. **Sales ⬀73—Requirements that "these cabinets" have particular finish held to mean all cabinets ordered, and not a large percentage only.**

"These cabinets," as used in order specifying "these cabinets to have the best lacquer finish equal to our sample," held to mean all cabinets, and not a large percentage of them only.

6. **Action ⬀8—Policy of the law not to take notice of trifling matters is growing.**

It is the growing policy of the law not to take notice of trifling matters.

7. **Contracts ⬀312(1)—Anything so material and important as to defeat purpose of parties is breach of contract.**

Anything so material and important as in truth and fairness to defeat essential purpose of parties is breach of contract.

8. **Sales ⬀182(1)—Whether number of defective cabinets delivered was so material as to defeat purpose of parties held for jury.**

Whether number of defective cabinets delivered was so material as to defeat essential purpose of parties to sales contract held for jury.

9. **Sales ⬀388—Instruction submitting question whether bulk of cabinets delivered corresponded to sample rather than whether number of defective cabinets delivered was so material as to justify cancellation held erroneous.**

In action for breach of contract to buy radio cabinets, instruction submitting question whether number of defective cabinets was such that bulk of those delivered did not correspond to sample held erroneous; real issue being whether number of defective cabinets was so material as to justify cancellation of contract.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action by Kern Dodge, receiver for the Unit Construction Company, against F. A. D. Andrea, Inc. Judgment for plaintiff, and defendant brings error. Reversed, and new trial awarded.

For opinion below, see 10 F.(2d) 387.

Walter Biddle Saul, Allen S. Olmsted, 2d, and Saul, Ewing, Remick & Saul, all of Philadelphia, Pa. (Charles E. Frances, of New York City, of counsel), for plaintiff in error.

Robert T. McCracken, Wayne P. Rambo, and George G. Chandler, all of Philadelphia, Pa., for defendant in error.

Before DAVIS, Circuit Judge, and CLARK and JOHNSON, District Judges.

DAVIS, Circuit Judge. This was a suit at law for damages for an alleged breach of a contract for 20,000 cabinets for radio sets.

The contracts consisted of proposals in the form of orders by the defendant and acceptances by the plaintiff. Each order contained in substance the following provision: "These cabinets to have best quality lacquer finish equal to our sample. The color must be identical with our sample." Some of the orders contained the provision: "These cabinets to have best quality lacquer finish that will not change color or turn white."

The cabinets were shipped from plaintiff's factory in Philadelphia to defendant's plant in New York, where they were fitted out with other parts of a radio set and forthwith sent out to the trade. After delivery, white spots and blemishes developed on them. This caused, not only numerous complaints to defendant from its customers, but also the return of many cabinets. The plaintiff refinished these returned cabinets, and, in order to save. freight charges from New York to Philadelphia and return, it sent a man to New York to refinish them at defendant's plant. There is a dispute as to how many defective cabinets there were. Defendant says there were about 3,500, or nearly one-third of the number delivered, but plaintiff denies this.

· There is no question about the good faith of the parties to the contract. The cause of the trouble seems to have been the use of a process in finishing known as "padding." This process is used with beneficial results in varnish finish, but in lacquer finish produces a whitened effect, which, however, does not appear for some time. The evidence indicates that the officers of the plaintiff company did not know that this process was being used on this lacquer finish by its employees, and did not discover it until some time after the contract was canceled, when a new superintendent was secured at the plant. Because the defects did not appear immediately, they were not discovered at plaintiff's factory, where defendant had an inspector in accordance with the terms of the contract. The return of the cabinets to the plaintiff's plant began early in December, 1924, and continued until March 6, 1925, when defendant wrote plaintiff as follows:

"The dissatisfaction with these cabinets has become so general that some dealers are threatening or indicating an intention of discontinuing selling our productions, so you can readily appreciate our good will with the trade and the purchasing public is seriously jeopardized. Since our complaints have not resulted in any improvement in the conditions, and the protests of dealers are increasing, we have arrived at the conclusion that you are either unable or unwilling to produce cabinets for us in accordance with the specifications upon which the order was placed with you; in consequence we have concluded to cancel the order and in future will accept no further cabinets from you."

On March 9, 1925, the plaintiff replied, and among other things said: "Unless your letter of March 6th is formally withdrawn on or before March 11, 1925, we will on that date stop work on all of your orders, prepare and render you as promptly as possible a statement of your indebtedness to us, and place the account for collection if not settled promptly." The letter was not withdrawn and the plaintiff ceased manufacturing on March 11th. This suit was begun on the 18th of June following, and was tried to by the court and jury, which rendered a verdict for the plaintiff, and the defendant has brought it here on writ of error.

The essence of defendant's complaint is that the learned trial judge erred in defining the word "bulk," as used in sections 14 and 16 of the Uniform Sales Act of Pennsylvania of May 19, 1915 (P. L. 543; 6 Purdon's Dig. [13th Edition] p. 7472 [Pa. St. §§ 19662, 19664]). Those sections provide that:

"14. Where there is a contract to sell or a sale of goods by description, there is an implied warranty that the goods shall correspond with the description, and if the contract or sale be by sample, as well as by description, it is not sufficient that the bulk of the goods corresponds with the sample if the goods do not also˙ correspond with the description."

"16. In the case of a contract to sell or a sale by sample:

"(a) There is an implied warranty that the bulk shall correspond with the sample in quality.

"(b) There is an implied warranty that the buyer shall have a reasonable opportunity of comparing the bulk with the sample, except so far as otherwise provided in section forty-seven, subsection third.

"(c) If the seller is a dealer in goods of that kind, there is an implied warranty that the goods shall be free from any defect rendering them unmerchantable which would not be apparent on reasonable examination of the sample."

In his charge to the jury the learned trial judge said:

"There is no provision in the law that, where there is a sale by sample, every individual article sold must conform to the sample; and it.is a question, then, whether the bulk of these cabinets delivered to the plaintiff did or did not correspond to the sample.

"If from the evidence in the case you are satisfied that a very large percentage of the cabinets delivered did not correspond with the sample, then, of course, the bulk of those delivered did not correspond. You will take into consideration the large number of cabinets that were delivered—I think over 11,500 cabinets were delivered—and take into consideration the evidence as to the number of cabinets which did not correspond to the sample, and then determine from that whether or not from the evidence in this case you believe that the defendant had a right to cancel the contract. The law does not lay down any definite percentage or pro rata number of individual articles to be delivered that must correspond with the sample, but it does say that there is a warranty that the merchandise delivered shall correspond in bulk. So that it would be for you to determine what proportion of the merchandise delivered did not correspond to the sample, and when you have determined that, considering a reasonable definition of the word 'bulk,' whether you consider that the goods delivered did or did not correspond in bulk."

[1, 2] Did the word "bulk," as used in this portion of the charge, correspond with the word as used in the Uniform Sales Act? In section 14 of the act, the word "bulk" is used to denote the goods as distinguished from the sample with which they must correspond. "Goods," in the phrase "bulk of the goods," is an appositional genitive defining "bulk." Similarly we say "city of Philadelphia," or "the city, Philadelphia." "Philadelphia" is in apposition with "city." So the word "goods" is in apposition with "bulk," and means the bulk, to wit, the goods.

[3] The Legislature did not intend to distinguish between "the bulk of the goods" and "the goods" themselves. When goods are sold by both sample and description, "the bulk of the goods"—that is, the goods themselves—must correspond with the sample, and the same "goods," without the mention of "bulk," must also correspond with the description. The "bulk of the goods" and "the goods" are one and the same thing.

In section 16 the word "bulk" is used without the addition of the words "of the goods." "There is an implied warranty that the buyer shall have a reasonable opportunity of comparing the bulk with the sample," and thus satisfy himself that all the goods he has purchased are as warranted.

[4] "Bulk," as used in the charge, means something less than all the goods. This thought ran through the charge. In the opinion refusing a new trial the definition of "bulk" in Webster's and the Century Dictionaries is cited in support of this view: "The main mass of the body; the largest or principal portion; the majority; as the bulk of a debt."

[5] The contract in question expressly provided that: "These cabinets to have best quality lacquer finish, equal to our sample." "Bulk" is not used. "These cabinets," in the contract, mean all the cabinets embraced within it, and not "a very large percentage" of them.

[6, 7] However, it is the growing policy of the law not to take notice of trifling matters. "De minimis non curat lex" is a maxim which has greater force to-day than ever. Courts in different jurisdictions have taken opposite views of what constitutes a breach. Some hold that nothing short of an intent totally to repudiate the contract is a breach, while others hold that any failure or defect, though immaterial, is a breach. The better and prevailing view is that anything "so material and important as in truth and fairness to defeat the essential purpose of the parties" is a breach. Helgar v. Warner's Features, 222 N. Y. 449, 119 N. E. 113; Bernhardt Lumber Company v. Metzloff, 113 Misc. Rep. 288, 184 N. Y. S. 289; 2 Williston on Sales, § 465b.

[8] The real question in issue was whether or not the number of defective cabinets was so material as in truth and fairness to defeat the essential purpose of the parties, and this fact was to be found by the jury, unless no reasonable person could have drawn more than one inference from the facts or the defects were so slight that they could not possibly be regarded as vital. 2 Williston on Sales (2d Ed.) pp. 1180, 1181; Truitt v. Guenther Lumber Company, 73 Pa. Super. Ct. 445; Du Pont v. United Zinc Co., 85 N. J. Law, 416, 89 A. 992; Ferguson v. Chuck, 194 App. Div. 583, 185 N. Y. S. 800; C. Bahnsen v. Gerst, 235 N. Y. 426, 139 N. E. 563; Roach v. Lane, 226 Mass. 598, 116 N. E. 470; Monroe v. Diamond, 279 Pa. 310, 123 A. 817. In Paulson, Linkroun & Co. v. Bidwell (C. C. A.) 278 F. 381, we said that a breach justifying cancellation must be "substantial."

[9] As above quoted, the charge contained the following statement: "If from the evidence in the case you are satisfied that a very large percentage of the cabinets delivered did not correspond with the sample, then, of course, the bulk of those delivered did not correspond." Every positive implies a contrapositive or obverse. The contrapositive of the above statement in the charge is that, unless a very large percentage of the cabinets did not correspond with the sample, the bulk

and sample did sufficiently correspond, and there was no ground for the cancellation of the contract by the defendant. This is an incorrect statement of the law, but is doubtless the conclusion which the jury drew from the language of the charge.

If the number of defective cabinets shipped to defendant by plaintiff was *material,* when all the facts and circumstances were considered, the bulk did not legally correspond with the sample, and the defendant was justified in canceling the contract. If, on the other hand, that number, in the light of all the facts, was immaterial, the bulk did substantially correspond 'with the sample, and the defendant was not justified in canceling the contract. *Materiality* is the test that justifies cancellation, and not "a very large percentage"; for something less than "a very large percentage" might, under the circumstances, be material. The charge did not clearly declare the law, and was susceptible of an erroneous conclusion, which was prejudicial to the defendant.

Therefore the judgment is reversed, and a venire facias de novo is awarded.