## F. A. D. ANDREA, Inc., v. DODGE.*

Circuit Court of Appeals, Third Circuit.
September 26, 1928.

No. 3815.

Allen S. Olmsted, 2d, and Saul, Ewing, Remick & Saul, all of Philadelphia, Pa. (Charles E. Francis, of New York City, of counsel), for plaintiff in error.

George G. Chandler, Wayne P. Rambo, and Robt. T. McCracken, all of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. This writ of error is directed to the judgment for $59,065.70 entered on a verdict rendered at the second trial of the case. The main facts may be found in this court's opinion reviewing the first trial, reported in F. A. D. Andrea, Inc., v. Dodge, 15 F.(2d) 1003. For purposes of this review it will be enough to state that the action is in assumpsit to recover damages for breach after part performance

*Rehearing denied October 29, 1928.

of several contracts wherein Dodge, Receiver, engaged to make and sell and the Andrea corporation promised to take and pay for a large number of radio cabinets of specified designs and required quality of finish. Many turned white. After about 11,000 had been delivered and accepted Andrea canceled the contracts and Dodge brought this suit and later had the judgment now here on Andrea's writ assigning manifold errors in the trial. These assignments, which relate mainly to testimony for and against many items of damages, are of that character, not unusual in bitter litigation, which requires a study and understanding of the whole trial, yet their discussion in an opinion would be long and dreary and, in view of the manner in which we have disposed of them, useless. Of the many assignments there are only two that call for discussion. Of these only one is fatal.

The trial had lasted a week. As the case was very complex, covering ten or a dozen claims for damages with corresponding claims for interest, all involving figures, the attorney for the plaintiff, when the jury was about to retire, moved that his calculation of damages be sent out with them. The learned trial judge refused the motion. Eventually the jury returned with a verdict "that all claims of the plaintiff should be paid." While it showed the judgment of the jury, that, of course, was not a proper verdict. The trouble was manifest. The learned trial judge, realizing the impossibility of carrying a great number of figures in their heads, re-charged the jury and then gave them the plaintiff's calculation of damages, whose mathematical correctness is not questioned, cautioning them:

"In order to lighten your burden, I will send out with you the calculation made by plaintiff's counsel. You are not however to be bound by that. He is only showing what the highest amount is that he claims, and as showing the various items, because I do not see how you can work out a verdict without having some sort of a statement before you as to what has been proved at the trial."

If the learned trial judge erred in handing the jury the plaintiff's calculation, one item of which he had corrected to conform to one of his rulings in the defendant's favor, the error was not saved by an exception; but, even were the matter here on a valid assignment, we would not find error in what he did in the circumstances.

The remaining assignment concerns the allowance by the jury of certain of the plaintiff's claims arising out of a change in the

main contracts which provided for a bonus. It seems that in November, 1924, the defendant was anxious for larger deliveries of cabinets than the contracts called for. After conversations and correspondence, the proposition which the defendant finally made to the plaintiff and the plaintiff accepted was:

"Starting December 1, we are willing to allow you a bonus of $1.00 per cabinet for each cabinet that you deliver, provided that deliveries of 1,100 cabinets per week are sustained throughout the balance of the contracts. We are willing to pay you this bonus at the end of each month if your deliveries throughout that month amount to 1,100 or more cabinets each and every week."

This was not a variation of the contracts; it was a modification providing another and higher price for the product, conditioned however upon increased deliveries throughout the remainder of the contracts. It also provided the period for bonus payments, which was to be "at the end of each month," but then only on condition that throughout that month, namely, in each and every week, full deliveries had been made at the new weekly rate. The plain meaning of the latter provision is that, failing to make the newly agreed deliveries "each" week "throughout" a given month, the plaintiff would not be entitled to the bonus on lesser deliveries made in that month. Throughout the first month—December, 1924—the plaintiff made the required weekly deliveries and presented a bill for the agreed bonus. There is no dispute about that. After Christmas the defendant discovered that it was receiving more cabinets under the bonus arrangement than it could handle; so it addressed a letter to the plaintiff, explaining its difficulties, saying:

"In accordance with our telephone conversation of January 2 with Mr. Brown, it is necessary *to ask you* to reduce your daily shipments of 175–A and 185–A cabinets to us and *to revoke our bonus arrangement until further notice.* * * * We therefore ask you to hold your deliveries to a minimum for the next few days. We hope that this reduction will be only temporary and it will not be long before conditions will permit *resuming* at something near the previous schedule."

It was not until January 21 that the plaintiff replied to this letter. He then said:

"*In compliance with your request* we *have* rearranged our production schedule, *revising* your daily deliveries on cabinets to (something less than 1,000 a week).

"This *revised schedule* extends deliveries on No. 185 to March 28 and on No. 175 and 190 cabinets to March 21, whereas the production was, as you know, originally scheduled to be completed February 15.

"As *desired extension of deliveries* not only ties up our capital, but also our producing facilities, for approximately six weeks beyond the contemplated period, we trust that if you find it at all possible *to increase these daily deliveries* to go beyond the present figures that you will do so, giving us about a week's advance notice of the desired *change.*

"Assuring you of our desire to co-operate with you in every way in adjusting yourselves to market conditions, we are," etc.

What happened following this exchange of letters was an immediate reduction by the plaintiff of weekly cabinet deliveries below the 1,100 standard and failure on his part to submit bills to the defendant for bonus on deliveries made through January and the remaining period until the alleged breach of contracts by the defendant and suit wherein the plaintiff claimed and was allowed by the jury $4,372 for "bonus on cabinets delivered January 1 to March 11, 1925," and $8,293 for "bonus on cabinets (not delivered) to complete contracts," aggregating a bonus claim of $12,665, with interest in the sum of $2,001.06.

At the trial the bonus matter was sharply contested. The defendant submitted a point that this one of the plaintiff's claims should be disallowed "as the evidence showed that the bonus arrangement was rescinded by mutual consent." The learned trial court denied the point, and instead of passing on the question of rescission as matter of law or submitting it to the jury as an issue of fact, charged the jury that:

"The question as to whether there should be any payment on account of bonus depends upon whether the plaintiff lived up to his contract to deliver up to that amount or whether, if he did not, it was through his failure to manufacture and supply up to that quantity; or, on the other hand, whether or not failure to manufacture and deliver 1,100 cabinets per week was due to the failure of the defendant to order up to that amount.

"If you find from the evidence that the plaintiff was able and willing to deliver up to that amount, and the defect in the cabinets was not due to any fault upon his part, then he would be entitled to recover damages for such cabinets as he did deliver or was in such position to deliver upon which the defendant had agreed to pay a bonus.

"If, however, you find that the failure to

accept the quantity sufficient to make up the 1,100 cabinets per week was through defective work and finish on the part of the plaintiff, then the defendant, of-course, was justified in refusing or failing to accept cabinets, which, as to quality and description, did not reasonably come up to what was agreed to under the contract."

We are inclined to believe that the matters referred to in these paragraphs, which are reflections of the main issues long on trial, were so fixedly in the mind of the learned trial judge that quite unconsciously he grafted them on to the collateral bonus issue in his charge. As we look at the matter "the question as to whether there should be any payment on account of the bonus" does not, as the learned judge said, depend primarily on whether the plaintiff lived up to his main contracts to deliver or the defendant lived up to its promise to order 1,100 cabinets a week but depends on whether or not the bonus arrangement, validly made a part of the contracts, had later been rescinded by mutual consent.

Continuing, the learned judge said:
"If you find from the evidence the plaintiff was able and willing to deliver up to that amount, * * * then he would be entitled to recover the bonus."

That, we think, would be true only if the bonus contract had not been rescinded. If the plaintiff had joined in its rescission, clearly he was not thereafter entitled to a bonus. Therefore the question of the rescission of the bonus contract should have been decided by the court or submitted to the jury as an issue preliminary to the one submitted.

If the agreement to rescind the bonus contract were ambiguous or if it could be interpreted only by the subsequent conduct of the parties, then, clearly, the issue of rescission should have been submitted to the jury. But as we read the record the claimed agreement to rescind is in writing, it stands undisputed, and its terms are free from ambiguity or any uncertainty. The defendant by one letter asked the plaintiff "to revoke" the bonus arrangement. The plaintiff by answering letter complied in terms with the defendant's request and in terms stated that it had revised and reduced its weekly deliveries. This is all there was about it. We can see in this nothing but a complete rescission of one feature of running contracts made by mutual consent of the parties unequivocally expressed. Therefore we are constrained to hold that the learned trial judge should himself have determined the is-

sue of rescission by construing the written agreement, and by construing it in the way we have, and he should have withheld the issue from the jury.

Finding that the learned trial judge fell into error when he failed to construe the agreement to rescind the bonus arrangement as matter of law and when instead he submitted it to the jury along the lines of the main issues of the case, and finding also that the rescission abrogated the bonus contract for January deliveries as well as for all subsequent deliveries, we are constrained to direct that the judgment be reversed unless the plaintiff shall file a remittitur for the two bonus amounts claimed and allowed together with the interest thereon. Should that be done, the judgment as modified will be affirmed.