WILLIAM J. YOUNG *vs.* ERASTUS E. WINKLEY.
ERASTUS E. WINKLEY *vs.* WILLIAM J. YOUNG.

Essex. January 2, 1906. — May 17, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Partnership. Equity Pleading and Practice,* Master's report, Appeal. *Equity Jurisdiction,* Accounting between partners. *Interest. Damages.*

In a suit in equity for an accounting between partners it appeared that for a period of six years, while a partnership formed by an oral agreement existed between the plaintiff and the defendant, the plaintiff, who by the agreement furnished money but not his own services, was carrying on a separate business under his own name, and that the business of the partnership and that of the plaintiff then were consolidated, each partner contributing his net share in the partnership theretofore existing and agreeing to give his whole time to the business, and the plaintiff contributing the net assets of the separate business theretofore carried on in his own name, on which as a special capital he was to receive interest at the rate of six per cent per annum, that the defendant about a year before the consolidation made an agreement with a certain company called a "retainer" by which that company was to pay the defendant $2,500 a year for an option on all his inventions in a certain class of machinery. On the question whether the

$2,500 paid annually to the defendant for this "retainer" was made partnership property at the time of the consolidation, a master found "that there was no agreement between the partners with reference to this money," but later in his report said "There was a conference between the parties about the time after consolidation . . . with reference to the retainer, so called, received by" the defendant. "I find that from the conduct of the parties and their conversation, this retainer, namely, $2,500 per year, received by" the defendant from the company in question, "was partnership property, and the amount of the same received by" the defendant "should be charged to his account." The defendant contended that the findings were inconsistent. *Held*, that the findings properly interpreted were not inconsistent, and that their fair meaning was that, while the matter of the retainer was not taken up and considered when the consolidation was made, the parties soon after took it up and reached the conclusion that the retainer should be considered partnership property. *Held, also,* that the finding of the master that the retainer was partnership property was a finding of fact and not a conclusion of law.

Where a master's report contains no report of the evidence, a finding of the master cannot be revised on appeal from a decree confirming it unless upon the face of the report it is inconsistent with other findings and is plainly wrong.

Where an order of reference to a master does not require him to report the evidence, he properly may refuse to report all the evidence upon a certain subject, although if asked to report the evidence necessary to bring clearly before the court a question of law raised by the requesting counsel it may be his duty to comply with the request.

Where a suit for an accounting between partners has been referred to a master, who in his report finds that a certain sum of money is due from the defendant to the plaintiff, but says nothing about interest, in regard to which no point has been raised before him, if the judge makes a final decree overruling the defendant's exceptions to the master's report and ordering that the defendant pay to the plaintiff a certain sum of money with interest from the filing of the bill, no question as to interest having been raised, and the defendant appeals from the decree, naming it as the decree "confirming the master's report," whether the question of interest is open to the defendant on the appeal, *quaere.*

Where a suit for an accounting between partners has been referred to a master, who in his report finds that a certain sum of money is due from the defendant to the plaintiff but says nothing about interest, the judge may allow interest by way of damages from the date of the filing of the bill.

LATHROP, J.   These are two bills in equity brought in the Superior Court, each seeking a dissolution of the partnership previously entered into by the parties, the appointment of a receiver, and a settlement of the matters in controversy.   The Superior Court ordered the cases to be consolidated, and appointed the same person receiver and master.   The decree appointing the master did not order that the evidence should be reported.   The master heard the parties and made a report to which both parties filed exceptions.   The Superior Court overruled all the exceptions, and entered a final decree order-

ing Winkley to pay over to Young the sum of $2,418.09, with interest from the date of the filing of the bill in the first case; and that Young have execution for the sum so computed. From this decree Winkley appealed to this court.*

The following facts appear in the master's report.

In 1891 the parties formed a copartnership, by an oral agreement, under the firm name of E. E. Winkley and Company. To this copartnership Winkley was to devote all his time. Young furnished the money, and was not required to devote any time to the business of the firm of E. E. Winkley and Company. The firm of E. E. Winkley and Company continued from 1891 to 1897. During that time Young was engaged in the business of manufacturing machinery, in his own name of W. J. Young. Up to 1897 Winkley had nothing to do with the business run under the name of W. J. Young.

In 1897 the business of E. E. Winkley and Company and that of W. J. Young were consolidated by an oral partnership agreement, but the business was continued for commercial reasons under the separate names of E. E. Winkley and Company and W. J. Young. The master found the oral partnership agreement of February, 1897, to have been as follows: Winkley was to contribute to the consolidated firm his net share of the capital of E. E. Winkley and Company. Young was to contribute to the consolidated firm his net share of the capital of E. E. Winkley and Company. Each party was to give all his time and attention to the business of the new firm. Young was to contribute as a special capital the net assets of the W. J. Young business. For this excess capital Young was to receive interest at the rate of six per cent per annum. No express agreement as to what salary each partner should draw appears to have been made, but from the conduct of the partners there appeared to be a tacit understanding that each partner was to receive $50 per week as a salary, which was to be charged to the expense account.

The principal question in controversy between the parties relates to what is called by the parties a "retainer." This is explained by the master to be an arrangement made about Jan-

*The form of this appeal is mentioned on page 575.*

uary 1, 1896, by Winkley on the one side and the general manager of the Goodyear Company * on the other side, by the terms of which the Goodyear Company was to pay Winkley $2,500 a year, in consideration of Winkley's giving the Goodyear Company an option on all his boot and shoe working machinery inventions. It is stated in the report that Winkley began to draw that amount about January 1, 1896, and continued to draw the same to the date of the filing of the bills.

The master made two findings in regard to this: "I find that there was no agreement between the partners with reference to this money which has been referred to throughout as a 'retainer.'" Later on he says: "There was a conference between the parties about the time after consolidation in February, 1897, with reference to the retainer, so called, received by Winkley. I find that from the conduct of the parties and their conversation, this retainer, namely, $2,500 per year, received by Winkley from the Goodyear Company, was partnership property, and the amount of the same received by Winkley should be charged to his account."

Winkley contends that these findings are inconsistent; but we are of opinion that they are not necessarily so, and that their fair meaning is that while this matter was not taken up and considered when the consolidation was made the parties soon after took up the matter and reached the conclusion that the retainer should be considered partnership property.

We cannot accede to the contention of Winkley that the latter finding of the master is a conclusion of law and not a finding of fact. There is no report of the evidence, and we cannot revise the finding, "unless, upon the face of the report, it is inconsistent with other findings and is plainly wrong." *Crane* v. *Brooks*, 189 Mass. 228. We cannot say that the two findings are necessarily inconsistent, and that the latter finding is plainly wrong. The exceptions relating to the matter of the retainer were properly overruled.

The next contention is that there was error in the accounting, and this is the subject of three exceptions. The master however has not given the items of the account, except the grand totals.

---

* This was a corporation of which the full name was the Goodyear Shoe Machinery Company.

Winkley relies upon the following statement in the master's report: "The special capital, so called, contributed by Young, consisted of stock, machinery, fixtures, bills receivable. About one third of the machinery was purchased in 1900. Large purchases of machinery were made in 1895 and 1896. The prices for such machinery were put in at the original cost in making up the special capital. The bills receivable were mostly collected. The price of the stock put in was fixed by Young." The complaint of Winkley is that the master allowed nothing for depreciation, but this fact does not appear in the master's report, nor does it appear that the master based his result upon these figures. He is merely stating how the parties made up their special capital.

The next exception relates to the exclusion of evidence. It appears from the report that on the direct examination of Winkley, he was asked this question: "Have you ever rendered any service to any other company (other than the Goodyear Company) for which you have made no charge?" The master ruled that such a line of inquiry was immaterial, but allowed Winkley to go into his relations with, and the amount and nature of his services rendered to, the Goodyear Company, both before and after the date when he began to receive his retainer from the Goodyear Company. We find nothing in the report of the master to show that the question asked was material to any issue in the case.

The next contention is as to the refusal of the master to report the evidence relative to the retainer of $2,500 per year paid by the Goodyear Company to Winkley or enough of the same to enable the court properly to consider the exception taken by the counsel for Winkley at the hearing as set forth in the exception numbered 12. Exception 12 reads: "The party Winkley excepts to the refusal of the master to admit the evidence offered by Winkley, as follows." Then follow some questions and answers which do not appear in the master's report; but it is too plain for argument that this testimony is not properly before us. As to the broader ground, Winkley relies upon the rule stated in *Parker* v. *Nickerson*, 137 Mass. 487, 493, as follows: "Although the order of reference did not direct the master to report any of the testimony to the court, it was his duty, at the request

of a party, to report evidence so far as was necessary to bring intelligently before the court any question of law raised before ·him at the hearing." See also *East Tennessee Land Co.* v. *Leeson,* 183 Mass. 37. The difficulty with Winkley's case in this respect is that he did not ask the master that so much of the evidence as bore upon the question of law in regard to the retainer be reported, but that the entire evidence relative to the retainer be reported. This the master was not bound to do. See *Nichols* v. *Ela,* 124 Mass. 333.

The last objection raised by Winkley is in regard to interest allowed in the final decree. This decree ordered Winkley to pay to Young the sum of $2,418.09, " with interest from the date of the filing of the bill of William J. Young *vs.* Erastus E. Winkley." No question seems to have arisen in the court below as to interest. The master in his report did not mention it; and the appeal is from the decree " confirming the master's report." Assuming, however, that the question is open to Winkley, we see no error in the decree. Interest is allowed as damages. The master made up his report without computing interest. It was within the power of the presiding judge to allow interest from the date of the writ. *Johnson* v. *Boudry,* 116 Mass. 196. *Speirs* v. *Union Drop Forge Co.* 180 Mass. 87, 93. We find nothing in the R. L. c. 177, § 8, to lead us to a different result. That statute was passed merely to allow interest up to the time of entering judgment in various cases where interest had already been allowed, as in awards, the report of an auditor or master in chancery, or the verdict of a jury. It was not intended to cut down the right of a party to interest from the date of his writ or other process, where by inadvertence no interest had been allowed in a verdict. This is covered by the decision in *Jackson* v. *Brockton,* 182 Mass. 26. In that case, as appears by the papers in the case, an action was brought on an account annexed. The case was referred to an auditor, who found that the plaintiff was entitled to damages on all the items of the account from the date of the several demands to the date of the writ. Judgment was entered for this amount, and a writ of error was brought by the original plaintiff to have interest from the date of the writ added to the amount of the judgment. The court so held. There is a remark in the case, on which Winkley relies, as follows: " In

some cases where the amount to be paid is unliquidated until the report is filed it would be unjust to treat the defendant as in default before that time. Under such circumstances the usual practice under Pub. Sts. c. 171, § 8, is to compute interest from the date of the report." The case at bar is not one of unliquidated damages, but of an account between partners; and we see no injustice in allowing interest from the date of the bill.

The case of *Fuller* v. *Dupont*, 183 Mass. 596, on which Winkley relies, was a suit upon an administrator's bond, and interest was allowed only from the date of the allowance of the account by the Probate Court, and not from the date of the writ. This was decided upon its peculiar circumstances, and we do not understand the court as laying down a general rule that in an action on a probate bond interest is to be allowed only from the allowance of the account in the Probate Court. See *McKim* v. *Blake*, 139 Mass. 593; *McKim* v. *Hibbard*, 142 Mass. 422; *Forbes* v. *Ware*, 172 Mass. 306. However this may be as to actions on probate bonds, we find no error in the course adopted in the case before us.

*Decree affirmed.*

*B. Phillips & A. H. Hildreth,* for Winkley.
*S. Parsons & H. A. Bowen,* for Young.