DORA LONSTEIN *vs.* NORMAN A. HARRINGTON & others.

Worcester.  September 25, 1928. — November 26, 1928.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Mortgage*, Partial release. *Surety.*

An interlocutory decree recommitting a suit in equity to a master rests in the judicial discretion of the trial judge and will not be reversed when there is nothing in the record which discloses that his discretion was not properly exercised.

A bill in equity by one, who had assigned to the defendant a mortgage and mortgage note as further security for a loan by the defendant to a third person, also secured by a mortgage of real estate of the third person, to enjoin the defendant from foreclosing the assigned mortgage on the ground that the defendant had depreciated the security by releasing some of the real estate of the third person from his mortgage without the plaintiff's consent, cannot be maintained where it appears that the equity of redemption so released from the third person's mortgage had no fair market value and that the plaintiff was not damaged by the release.

BILL IN EQUITY, filed in the Superior Court on May 25, 1928, and afterwards amended, to restrain the defendant from foreclosing two mortgages, called in the opinion the "Sweeney mortgages," which the plaintiff had assigned to him as further security for a loan, made by the defendant to Lizzie Grossman and also secured by a mortgage upon certain other real estate, including that called in the opinion the "Wyman Street property," the plaintiff alleging that the defendant without his consent had released the Wyman Street property from the latter mortgage.

The suit was referred to a master. Material facts found by the master in reports filed by him are stated in the opinion.

By order of *Gray*, J., decrees were entered confirming the master's reports and dismissing the bill. The plaintiff appealed from the final decree.

*F. P. McKeon*, for the plaintiff.

*R. B. Dodge*, (*A. T. Saunders* with him,) for the defendants.

PIERCE, J.   This suit is before this court on the appeal
of the plaintiff from an "interlocutory decree recommitting
the master's report, authorizing further hearings to be heard,"
from an interlocutory decree dissolving a temporary injunc-
tion, and from the final decree "dismissing the plaintiff's
bill."

The recommittal of the report rested in the judicial dis-
cretion of the trial judge; there is nothing in the record which
discloses that his discretion was not properly exercised.
*Anagnosti* v. *Almy,* 252 Mass. 492.   *Kilkus* v. *Shakman,* 254
Mass. 274.   The appeal from the interlocutory decree "dis-
solving the injunction" is not argued and is treated as waived.
No appeal is taken from the interlocutory decree confirming
the master's report and supplemental report, or from so
much of that decree as overruled the plaintiff's exceptions.
An examination of the exceptions leads to the conclusion
that the final decree is not erroneously affected by such
decree.   *Fay* v. *Corbett,* 233 Mass. 403.   *Peter Bent Brigham
Hospital* v. *McClure,* 245 Mass. 370.   The evidence which
was before the master is not reported.   It follows that the
facts found by him must stand, unless they are inconsistent
with each other or otherwise plainly wrong.   *Young* v.
*Winkley,* 191 Mass. 570.

Shortly stated, the facts which are pertinent to the issue
raised by the appeal are as follows:  On November 17, 1925,
one Lizzie Grossman, who is not a party to this litigation,
borrowed from the defendant Harrington $1,000, and gave
him a note therefor secured by a mortgage on four parcels
of real estate, one of which was known as the Wyman Street
property.   As a part of the same transaction, and to induce
Harrington to lend the money to Grossman, the plaintiff
executed an assignment of two notes secured by mortgages
on real estate, given to her by the defendants Mary A.
Sweeney and Patrick P. Sweeney, "authorized her husband,
Jacob Lonstein, to take the assignment to Attorney Cohan's
office for the purpose of having Attorney Cohan take her
acknowledgment, and also authorized her husband and At-
torney Cohan to deliver the assignment and the notes to
Harrington.   Harrington knew at the time of this assignment

that Jacob Lonstein and Attorney Cohan were authorized by the plaintiff to represent her in this transaction." After filling out the blank assignment, which was already signed by the plaintiff, Cohan, over the telephone, took her acknowledgment and "Immediately afterwards, Attorney Cohan, Mr. Lonstein, and Mr. Grossman went to Harrington's office with the Grossman note and mortgage and the Lonstein assignment and Attorney Cohan delivered these papers to Harrington. Either at that time, or shortly prior thereto, Jacob Lonstein delivered to Harrington the two Sweeney notes, which were originally given by the Sweeneys to Dora. Lonstein with the Sweeney mortgages. Each of these Sweeney notes, when delivered to Harrington, bore on the back the indorsement of Dora Lonstein." "For about a year and a half prior to November 17, 1925, Mr. Cohan had acted as attorney for Jacob Lonstein in various matters in which he was interested and had also acted as attorney for Dora Lonstein in like manner. When he was acting as attorney for her, she sometimes talked and dealt with him personally and sometimes Jacob Lonstein acted in her behalf. More frequently the latter was the case."

As respects this transaction the master specifically finds "that it was her free act and deed"; "that this loan of $1,000 was made by Harrington to Lizzie Grossman, that he expected the money loaned by him was going to her, and that Dora Lonstein was acting as surety for her, but the security upon which he chiefly relied in making this loan was the security furnished by Dora Lonstein." There was no separate note given by Dora Lonstein to Harrington. "Nothing was said or done . . . about placing fire insurance upon the properties covered by the Grossman mortgage for the protection of Harrington's interest as a mortgagee of said property, nor was any provision added or attached to existing fire insurance policies to accomplish that purpose. The mortgage itself was the Massachusetts statute form of mortgage. It contained no express provision relating to fire insurance." There was no legal duty on Harrington to insure the property for the protection of his own interest or that of the plaintiff.

On or about February 5, 1926, Grossman, for his own purpose, wished the Wyman Street property released from the mortgage.  With Mr. Lonstein he went to the office of attorney Cohan and spoke to him about getting a partial release.  These persons then went to Harrington's office and the "attorney told Harrington, in the presence of Grossman and Mr. Lonstein, that Grossman wanted to get a partial release of the Wyman Street property.  Harrington agreed to give it."  Cohan drew the release and Harrington signed and acknowledged it "with the full knowledge and consent of Jacob Lonstein."  Harrington made no inquiry as to whether Dora Lonstein assented to the partial release, and did not communicate or try to communicate with her about it.  He had no thought at the time regarding Dora Lonstein or her interest in the matter, nor what effect the giving of the partial release would have on the security which he held from her.  He gave the release because it was asked for and because he was not relying upon the Wyman Street property as security for the Grossman loan, but was relying on the assignment of the Sweeney mortgages as security for the loan.  From the time of the assignment of the Sweeney notes and mortgages up to the time of the giving of the partial release, Harrington had not been told by any one that Jacob Lonstein or Cohan did not represent Dora Lonstein in the matter of the partial release, nor had anything been said to him by Dora Lonstein or by any one else relating to their authority to represent her.  The master specifically finds "that Dora Lonstein did not personally know of or consent to the giving of this partial release to Grossman; nor did she assent to it by any agent or attorney thereunto authorized."

The trial judge, on the facts found in the report and in the report on recommittal, found that "when Attorney Cohan and Mr. Lonstein with Grossman called on the defendant Harrington and requested him to give the partial release he was warranted in believing that they were acting with Mrs. Lonstein's authority."  It is unnecessary to consider whether the facts reported warranted such inference, because the real fact shown by the report is that Harrington, in executing the

partial release, did not rely upon the ostensible authority of the group which sought the release but "on the assignment of the Sweeney mortgages as security for the loan." The finding of the master "that the value of the Wyman Street property on February 5, 1926, was less than the amount of the encumbrances thereon and that the equity of redemption in the property had no fair market value nor any value as security for a loan," and the finding of the judge that "she [the plaintiff] was not damaged by the giving of the partial release" were warranted by facts found in the reports. It results that the several decrees are affirmed with costs.

*Ordered accordingly.*