GEORGE EBERLEIN & another *vs.* CHARLES J. EBERLEIN.

Hampshire.    September 18, 1929. — November 27, 1929.

Present: RUGG, C.J., PIERCE, WAIT, & SANDERSON, JJ.

*Equity Jurisdiction,* To compel reconveyance of real estate. *Mortgage,* Equitable. *Parent and Child. Equity Pleading and Practice,* Master: findings. *Evidence,* Extrinsic affecting writings. *Deed,* Construction.

In a suit in equity seeking to have declared void a warranty deed of land from a father and mother to their son, a master found that the plaintiffs had been the owners of the land as joint tenants for many years; that, during the father's absence on a journey, creditors obtained judgments against him and the son paid a note given for money advanced to the father; that, on the father's return and just previous to his departure on a second journey, the deed was prepared by an attorney in accordance with instructions by the father and the son, nothing being said at the attorney's office as to its being intended as a mortgage; that the father signed and acknowledged the deed, which was left by the son with his sister for the mother's signature; that she signed it upon the sister's statement that it was for the purpose of enabling the son to pay necessary bills in his father's second absence; that the son agreed to assume and pay a mortgage subject to which the deed was given and paid for the drafting of the deed and the searching of the title; that the judgments against the father thereupon were satisfied; that the father never had paid the son for work done by him for the father during his minority; that the father had taken sums of money then earned by the son; that the father had not given the son his time during his minority and did not owe the son money at the time of the execution of the deed; and that the deed was given and intended as a mortgage to enable the son to manage his father's affairs during the father's second absence and to secure the son for payments made by him in satisfying his father's debts. A final decree was entered ordering the defendant to convey the land to the plaintiffs upon their paying to him sums found due to him in an accounting stated by the master. *Held,* that

(1) No inconsistency appeared in the findings by the master;

(2) The deed, although absolute in form, properly might be shown by oral evidence to have been intended for security only;

(3) On the findings, the final decree was proper in ordering the conveyance by the defendant upon the plaintiffs' paying to him sums found to be due him;

(4) The decree must be modified to include a provision that the plaintiffs indemnify the defendant against liability incurred in the assumption of the mortgage.

BILL IN EQUITY, filed in the Superior Court on November 12, 1926.

The bill, and material facts found by a master to whom the suit was referred, are described in the opinion. By orders of *Broadhurst*, J., and *Irwin*, J., respectively, there were entered an interlocutory decree confirming the master's report and a final decree giving the plaintiffs relief in accordance with the master's findings. The defendant appealed from both decrees.

*J. F. Henry*, for the defendant.

No argument nor brief for the plaintiffs.

PIERCE, J. This is an appeal from an interlocutory decree overruling exceptions to and confirming the report of a master, and from the final decree. The bill seeks a decree that a deed from the plaintiffs to the defendant, dated April 11, 1922, is of no legal effect, that the court order a reconveyance of the premises described in said deed, and for such other and further relief as to justice and equity may appertain.

The case was referred to a master who duly made his report. The evidence before him is not reported. It follows that the facts found are conclusive upon the face of the report unless they are inconsistent with each other or are plainly wrong. *Young* v. *Winkley*, 191 Mass. 570.

In substance the facts which follow appear in the report: The parties to the bill of complaint are father, mother and son. The parents, as joint tenants, on November 23, 1904, acquired title to certain real estate situated on the easterly side of Main Street, in the town of Hatfield, with the buildings thereon consisting of a two-family house, blacksmith shop, cider mill, and tobacco shed. The father is a blacksmith by trade, has always done blacksmithing,

and at the time of the master's report was working at his trade. The mother has worked this past winter, and for many winters, in a tobacco sorting shop. In the fall of 1921, the father went to Germany for his health and remained there until March 28, 1922. During his absence creditors brought suit, made attachments and obtained judgments. In January, 1922, one James L. Day notified the defendant that he held his note for $300; the defendant denied his signature but paid the note. The money secured by the note had been advanced to the father on December 2, 1921, immediately preceding his sailing for Germany on December 8, 1921. Sailing from Germany on March 28, 1922, the father came home; he remained about three weeks and then went again to Germany arriving there on May 18, 1922. During the time he was at home the deed which the bill of complaint seeks to have declared "not valid" was executed, and the judgments were satisfied.

The pertinent facts respecting the execution and delivery of the deed to the defendant are in substance as follows: While the father was at home, he caused a deed of the real estate in Hatfield and a bill of sale of certain chattels on the premises to be prepared at a law office in Northampton. Prior to the drafting of the deed, the father and the defendant went to the law office several times, and the deed was drawn in accordance with instructions. The defendant paid for the draft of the deed and for having the title searched. The deed is in the usual form of warranty deed conveying the premises free from encumbrances except a mortgage of $5,000 held by the Northampton Institution for Savings "which this grantee [the defendant] assumes and agrees to pay." It was signed and acknowledged by the father, taken by the defendant to the house in Hatfield and left on the table. That night he took it from the table and it then bore his mother's signature. Neither the father nor the defendant had ever had any talk with the mother as to her signing the deed. The defendant left $10 or $15 on the table and asked his sister, sixteen years of age, to have his mother sign. The sister asked her mother to sign and told her that the "deed was so that the defendant

could borrow money on the property while . . . [the father] was in Germany, to pay necessary bills." "At some time subsequent to the execution of the deed, the defendant went to the Northampton Institution for Savings and there assumed and agreed to pay the mortgage note." At the date of the deed the property was worth more than the amount of the mortgage and is now worth more than it was at that time.

The defendant was a minor living at home with his parents and attending high school when the deed was executed. He had always lived at home. He went to grammar school until he was fourteen, and then was three years out of school. When he was seventeen, he went to high school for four years, completing his studies in 1923. He never paid board to his parents. During the years he was attending school, he worked mornings and nights and on Saturdays in the blacksmith shop. He was never paid for the work he did for his father. He testified that when the deed was given his father owed him about $4,000 for labor. He further testified as to various instances where the father had taken sums of money earned by the defendant while working out, or which were the proceeds derived from the sale of a cow and pigs, claimed by the defendant as his own.

There is nothing in the reported facts inconsistent with the finding of the master that the defendant had never been given his time by his father, nor to controvert the findings that during the minority of the defendant, "his father was entitled to his earnings; that there was no money due the defendant from his father at the time the deed was given; and no money due him from his mother." *Benson* v. *Remington*, 2 Mass. 113. *Manchester* v. *Smith*, 12 Pick. 113, 115. Nor is there any inconsistency between the findings of the master that the property was conveyed to the defendant so that he might manage affairs during his father's absence, mortgage the property if necessary to raise money to pay bills and so that he would be secured for money that had been and should be advanced by him in payment of his father's debts, and the fact that the deed was drawn by the scrivener "in accordance with instructions" and contained

the agreement that the defendant should assume and pay the mortgage on the premises. Nor is the finding of the master, that the deed in form was an absolute conveyance and that at the lawyer's office nothing was said about its being intended to be a mortgage, inconsistent with his finding that "the intent was that the conveyance was by way of security for moneys that might be advanced by the defendant: that the deed was given and intended as a mortgage." It is settled law in this Commonwealth that a deed absolute in form may in equity be shown by oral evidence to have been intended as security for a debt. *Campbell* v. *Dearborn*, 109 Mass. 130. *Hassam* v. *Barrett*, 115 Mass. 256, 258. It follows that the ruling of the master, confirmed by the court, that the plaintiffs are entitled to a reconveyance of the property upon payment to the defendant of the money expended by him upon the property and for the plaintiffs' benefit, was right; as was a ruling that the defendant, upon a reconveyance, will also be entitled to interest on his disbursements computed on each item "where the evidence gives the date of payment." *Clark* v. *Seagraves*, 186 Mass. 430, 440. Of course if the defendant is entitled to receive interest on his disbursements he should be charged interest on his receipts. *Gibson* v. *Crehore*, 5 Pick. 146. *O'Brien* v. *Hovey*, 239 Mass. 37, 43.

The master in conclusion, after a full statement of the account between the plaintiffs and defendant, finds that "the plaintiffs are entitled to a reconveyance of the property upon their discharge of the tax obligations for the years 1925, 1926 and 1927, for which the defendant is liable, and upon their payment to the defendant of the amounts expended by him for them, and upon the property, $7,621.56, less the amounts chargeable to the defendant, $6,112.88, a net amount of $1,508.68." To this finding certain objections were taken by the defendant. These objections were overruled and the report confirmed by an interlocutory decree from which the defendant appealed. These objections are based largely on alleged inconsistent findings of material facts. Without referring to the objections at length, it is sufficient to say they have been fully considered

and treated in the opinion at large, and were overruled rightly.

The final decree makes no provision whereby the defendant is to be saved harmless and indemnified against any liability which he assumed on the $5,000 note to the Northampton Institution for Savings. The final decree should be amended to cover such liability of the defendant, and as so modified is affirmed. *Mills* v. *Day,* 206 Mass. 530. *O'Brien* v. *Hovey, supra.*

*Ordered accordingly.*