BUCKLEY & SCOTT UTILITIES, INC. *vs.* PETROLEUM HEAT
AND POWER COMPANY.

Suffolk.    November 5, 1942. — April 1, 1943.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Contract*, Performance and breach, Dealer's contract. *Proximate Cause.*
*Damages*, For breach of contract. *Equity Jurisdiction*, Plaintiff's clean
hands. *Equity Pleading and Practice*, Master: report of evidence.
*Evidence*, Relevancy and materiality. *Interest*.

A manufacturer violated an exclusive franchise, granted to a dealer to
sell oil burners in a certain territory, and rendered himself liable to the
dealer for resulting damage to the dealer's business, by advertising and
selling in that territory and in active competition with the dealer and
with intent to appropriate his business, oil burners which were merely
developments and improvements of and closely similar to those covered
by the franchise although they were sold under a somewhat different
name, and by incidentally disrupting the dealer's sales organization.

Conduct of a manufacturer of oil burners, which, in breach of an exclu-
sive franchise granted to a dealer to sell the burners, deprived the
dealer of sales of burners, properly was found to have been a proxi-
mate cause of the dealer's also losing incidental business in the sale of
fuel oil although the franchise did not expressly relate to oil, where it
appeared that the selling of oil "naturally and normally flowed from"
the sale of the burners and an inference was justified that the parties
to the franchise contemplated that the dealer might develop an oil
business dependent upon the continued existence of the franchise;
the dealer's damages for breach of the franchise properly included
compensation for loss of such oil business.

A dealer complaining of wrongful competition by a manufacturer in
breach of an exclusive selling franchise given the dealer by the manu-
facturer did not come into court with unclean hands by reason of his
having engaged in selling and installing another article competitive
with that covered by the franchise after the manufacturer's wrongful
competition had begun and solely on account of it.

In computing a dealer's damages against a manufacturer for loss of busi-
ness through wrongful competition of the manufacturer in breach of an
exclusive selling franchise granted by him to the dealer, there should
be deducted, in the circumstances, profits derived by the dealer from
dealings in another article undertaken solely because of the manu-
facturer's conduct and thereby made practicable for the dealer's
organization.

The provisions of Rule 90 of the Superior Court (1932) as to a master's
reporting summaries of evidence do not furnish a means for a party's

compelling the master to report additional subsidiary facts, or for a party's bringing before the court all the evidence in the case or the evidence on selected issues by raising before the master questions of law decisive of the merits which ought to be raised in court and asking him for a summary of the evidence pertaining thereto.

In a suit by a corporation for damages for breach by the defendant of an exclusive selling franchise granted to the plaintiff, evidence, that individuals who indirectly controlled the plaintiff were advised by their counsel that certain proposed action by them might itself be in violation of the franchise and that they disregarded counsel's advice and "went ahead," was irrelevant and properly excluded on the issue, whether the plaintiff came into court with clean hands.

In a suit in equity seeking damages for injury to the plaintiff's business resulting from a breach by the defendant of an exclusive selling franchise granted by him to the plaintiff, where a master's report contained an assessment of the plaintiff's damages but did not include interest thereon, it was proper for the judge to add interest on the amount of damages found by the master from the date of the filing of the bill to the date of the filing of his report, and under G. L. (Ter. Ed.) c. 235, § 8, the final decree should include interest to the date of its entry from the date of the filing of the master's report on the total of the damages found by the master and of such interest added by the judge.

BILL IN EQUITY, filed in the Superior Court on March 23, 1938.

After the filing of a master's report, a motion to recommit was denied by *Beaudreau*, J. By order of *Swift*, J., there were entered an interlocutory decree confirming the report, and a final decree directing the defendant to pay the plaintiff "the sum of $75,000, with interest on that sum from the date of the filing of the bill to the date of the filing of the master's report in the amount of $12,937.50, and with interest on $87,937.50 from the date of the filing of the master's report to the entry of the final decree, together with costs . . . ." The defendant appealed from all three decrees.

*R. G. Dodge*, (*T. Chase* with him,) for the defendant.

*C. B. Cross*, (*C. P. Bartlett* with him,) for the plaintiff.

QUA, J. On December 10, 1927, American Nokol Company entered into a contract with Buckley and Scott, Inc., by which the Nokol company granted to Buckley and Scott, Inc. the exclusive right until December 31, 1937, to sell the "NoKol" automatic oil burner in parts of Massachusetts, including Boston and its vicinity, and in parts of New

Hampshire. In this litigation this contract has been known as the "Nokol franchise," or the "franchise." On March 22, 1929, Buckley and Scott, Inc., assigned its rights in the franchise to the plaintiff, and on April 22, 1929, the defendant, through a mesne conveyance, acquired the assets formerly of American Nokol Company and assumed the liabilities upon its outstanding contracts. The case seems to have been tried before the master, as it has been argued before us, on the theory that after April 22, 1929, the rather common contractual relationship of manufacturer and distributor existed directly between the defendant and the plaintiff, the terms of which were embodied in the franchise and were binding upon each. We shall deal with the case on that basis.

The bill alleges unfair competition and misappropriation by the defendant of the plaintiff's business, but inasmuch as the plaintiff's rights spring from the franchise, and as the plaintiff now seeks only to recover damages, the suit bears also some of the aspects of an action of contract for breach of the exclusive franchise. No objection has been made to jurisdiction in equity.

During the times here material the defendant was the only manufacturer which sold oil burners nationally through dealer organizations and which also engaged in selling oil. There is an important relation between the sale of oil burners and the sale of the fuel oil burned in them. Prospective purchasers of burners require assurance of a supply of fuel oil. Where the same person handles both branches, sales of burners ordinarily result in contracts for the supply of the oil. The Nokol burners had come early upon the market and were readily salable. The defendant's purpose in acquiring the Nokol was "particularly because it expected and desired to obtain thereby the opportunity to sell fuel oil in connection with the sale and installation of such burners." It expected that the plaintiff would be willing to sell oil for it on commission, and shortly after it acquired the Nokol, for the sale of which the plaintiff then held the exclusive franchise in the Boston district, it proposed to the plaintiff that the plaintiff sell oil for the defendant on commission.

The plaintiff declined to do this for the reason that it could sell oil for itself at a profit much greater than the commission offered by the defendant. The defendant continued to press the plaintiff to sell oil on commission and threatened no longer to recognize the plaintiff's Nokol franchise unless it turned over its oil business to the defendant. The plaintiff complied with these demands from time to time as to parts of its oil business, and compromises were effected, but the controversy continued. Finally on March 8, 1932, the defendant informed the plaintiff that it wanted the plaintiff's oil business and was determined to get it and with that end in view made a proposal to the plaintiff which the plaintiff did not accept. The plaintiff's representative said, "This looks to me like an ultimatum." The defendant's representative replied, "Call it what you like." Thereafter the defendant made plans for and opened a "factory branch" in Boston from which it actively competed with the plaintiff in the sale of burners and of oil. It then sold models of burners which it called "Petro" and in advertising, "Petro-Nokol," but most of which the master found were essentially developments and improvements of the Nokol burner. The master found as a fact that the new models, except the "W–1," were so similar to the Nokol burners after which they were patterned "as to constitute them Nokol burners within the meaning of the Nokol franchise." This finding is consistent with the subsidiary findings and with the true construction of the franchise under which it could not have been intended that mere improvements and developments of the Nokol could be taken from the Nokol line and thrown into a competing line upon calling them by a different name. The defendant refused to sell these new burners to the plaintiff, but continued to furnish the plaintiff only the old models which it continued to call "Nokol" burners. It extensively advertised the so called "Petro" models and made many sales in the territory covered by the plaintiff's Nokol franchise. As a result of the defendant's opening its factory branch in the Boston territory in competition with the plaintiff and of the belief that the plaintiff's business could not survive, if not in some

instances also as the result of direct persuasion for which the defendant was responsible, the plaintiff's wholesale and retail sales managers and salesmen representing "more than half of the [plaintiff's] effective retail selling ability" left the plaintiff's employ and entered that of the defendant. This had "a very damaging effect on the plaintiff's retail selling organization." By means of an "announcement" by the defendant, followed by vigorous and determined efforts on the part of the plaintiff's former wholesale sales manager, after his employment by the defendant, the great majority of the plaintiff's sub-dealers signed up as sub-dealers for the defendant for the new models which the defendant was placing on the market in competition with the plaintiff. There were some price advantages in favor of the new models. The defendant carried on a successful campaign for the purpose of replacing at a special low price old Nokol model burners with one of the new models which the defendant was refusing to supply to the plaintiff. Still further reductions were given if the purchaser took an oil contract. After the defendant opened its factory branch it continued to use the name "Nokol" in connection with the name "Petro" in order to avail itself of the good will of the Nokol name in competition with the plaintiff.

The master properly finds as a conclusion from his other findings that the defendant undertook to appropriate to itself the plaintiff's business of selling burners under the Nokol franchise "and the incidental business in the sale of fuel oil which naturally and normally flowed from the sale of burners"; that the several acts of the defendant hereinbefore narrated were means to that end; that the defendant did thereby appropriate to itself business in burners and oil which otherwise the plaintiff would have received; and that the plaintiff's efficient sales organization was very nearly destroyed, its good will greatly impaired, and its rights under the Nokol franchise rendered practically valueless.

The defendant's conduct was in violation of its obligations to the plaintiff under the Nokol franchise. The franchise and a "memorandum" which became part of it con-

tained detailed provisions manifestly framed to secure the rights and to define the duties of both "Owner" and "Dealer" and to create a mutually profitable relationship between them. Neither party could lawfully do violence to the essential nature of this relationship. By an express provision of the franchise the "Owner" (defendant) became bound to "use due diligence to protect the territory covered by this appointment but cannot guarantee to prevent the shipment of Burners into the territory herein, defined by other parties than itself, and will not be responsible therefor." It seems to us contrary to this provision for the defendant itself, before the termination of the franchise, to invade the plaintiff's exclusive territory for the purpose of selling oil burners in direct competition with the burners which its predecessor had granted to the plaintiff an exclusive right to sell. A fortiori is this true where the major part of the burners so sold by the defendant were in fact merely improvements or developments of the Nokol line, although the defendant chose to sell them under a different name. It does not appear that the plaintiff accepted the defendant's nomenclature as modifying the plaintiff's rights under the franchise. See *Champion Spark Plug Co.* v. *Automobile Sundries Co.* 273 Fed. 74, 81–82. Moreover, even in the absence of an express agreement, there would have been implied in the franchise an agreement on the part of the "Owner" not to engage in competition with the "Dealer" in the latter's exclusive territory by means and in a manner that would practically destroy the right granted and that would also render it impossible for the "Dealer" to "promote" sales and to "operate his entire territory" as the terms of the franchise required it to do. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 378–379. *Garfield* v. *Peerless Motor Car Co.* 189 Mass. 395, 402–403. *Old Corner Book Store* v. *Upham,* 194 Mass. 101, 104–105. *Martino* v. *Pontone,* 270 Mass. 158. *Manners* v. *Morosco,* 252 U. S. 317, 326–327. *Foster* v. *Callaghan & Co.* 248 Fed. 944, 947. *Uproar Co.* v. *National Broadcasting Co.* 81 Fed. (2d) 373. Williston on Contracts (Rev. ed.) § 670, at page 1926; § 1293A. As

to the binding force and effect of an exclusive manufacturer-distributor contract like that here involved see further *Wiggin* v. *Consolidated Adjustable Shoe Co.* 161 Mass. 597; *Moon Motor Car Co. of New York* v. *Moon Motor Car Co. Inc.* 29 Fed. (2d) 3; *Jay Dreher Corp.* v. *Delco Appliance Corp.* 93 Fed. (2d) 275. The defendant therefore became liable to the plaintiff for the damage it caused to the plaintiff's business of selling "Nokol" burners.

The defendant also became liable to the plaintiff for the damage it caused to the plaintiff's business of selling oil in so far as that damage resulted from wrongful interference with the plaintiff's business of selling burners. The defendant argues that the franchise did not relate to oil and left the defendant free to establish a competing oil business; that incidental damage to the plaintiff's oil business was not within the contemplation of the original parties to the franchise as a probable result of a breach of its terms; and that the plaintiff cannot recover for this damage on any theory of contract. *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 21. Am. Law Inst. Restatement: Contracts, § 330. We are not yet prepared to concede that the plaintiff's rights in this matter are limited to such as it could enforce in an action of contract. If the plaintiff had acquired its franchise to sell oil burners from a stranger instead of from the defendant's predecessor, and if the defendant, for the purpose of getting for itself the plaintiff's oil business, had intentionally persuaded that stranger to break its contract, the defendant would have committed a tort and would have been liable for all damage proximately resulting from its tortious act. *Lumley* v. *Gye*, 2 El. & Bl. 216. *Beekman* v. *Marsters*, 195 Mass. 205. *Anderson* v. *Moskovitz*, 260 Mass. 523, 526. *Comerford* v. *Meier*, 302 Mass. 398, 404. *Sullivan* v. *Barrows*, 303 Mass. 197, 203. *Tompkins* v. *Sullivan*, 309 Mass. 496. Am. Law Inst. Restatement: Torts, §§ 766, 767. Can the defendant's liability be less extensive with respect to the oil business where the loss is caused, not by persuading a third party to break a contract, but by itself deliberately breaking its own contract with respect to the burner business? Can the right

of competition furnish justification for a loss intentionally inflicted outside the scope of the contract by the defendant's determination to use a favorable situation in which it found itself by reason of the fact that it had a contract and that it possessed the physical power to break that contract for a predatory purpose? We do not answer these questions, since we think that in any event the inference should be drawn that it was within the contemplation of the original parties to the franchise that the distributor might develop an oil business dependent upon the continued existence of the burner franchise. The defendant's predecessor knew or ought to have known of the interdependence between sales of burners and sales of oil and that the chief element of value in a burner franchise might well be, as apparently in this instance it turned out to be, the opportunity it afforded for the sale of oil. The plaintiff's predecessor was engaged in selling oil on commission when it took the franchise, and the defendant acquired the Nokol business less than a year and a half later, primarily for the purpose of selling oil. The master speaks of the sale of oil as "naturally" and "normally" flowing from the sale of burners. See *Dondis* v. *Borden*, 230 Mass. 73, 79, 80; *Greany* v. *McCormick*, 273 Mass. 250, 253.

The defendant contends that the plaintiff does not come into court with clean hands because after its difficulties with the defendant arose it engaged in the work of installing the "Marr" burner, which the master found "could reasonably be considered competitive with the burners constituting the Nokol heating business," and because of interests which the individuals who in reality owned the plaintiff acquired in the corporations which manufactured and distributed the Marr. The short answer to this contention, even if the plaintiff be held chargeable with the conduct of its officers and stockholders as individuals or in connection with other affiliated corporations, is that all that was done in connection with the Marr burner was done after the defendant had given the plaintiff the "ultimatum" of March 8, 1932, and had threatened to open its own factory branch in Boston. The preparations of the defendant to open its

factory branch in wrongful competition with the plaintiff and the efforts of those affiliated with the plaintiff to secure the right to sell the Marr burner went on simultaneously, and on the findings of the master the latter would not have been undertaken if it had not been for the former. Sales of Marr burners did not begin until after the defendant had disrupted the plaintiff's organization as already related, and installations of those burners by the plaintiff did not begin until after the defendant's factory branch was in full operation selling burners in competition with the plaintiff. The plaintiff's connection with the Marr burner was therefore defensive in character. It was excused by the defendant's previous breach of an "essential part of . . . [its] contract." *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 378. It lacked the element of indifference to legal or moral obligation which would render it contrary to public policy to grant the plaintiff relief. *Moore Drop Forging Co.* v. *McCarthy*, 243 Mass. 554, 564. *Barbrick* v. *Huddell*, 245 Mass. 428, 437. *New England Wood Heel Co.* v. *Nolan*, 268 Mass. 191, 197. *New York, New Haven & Hartford Railroad* v. *Pierce Coach Lines, Inc.* 281 Mass. 479, 482. *Samuel Hertzig Corp.* v. *Gibbs*, 295 Mass. 229, 231.

No error appears in the master's finding that but for the defendant's acts the plaintiff would have sold at retail at least seven hundred ninety-four burners and boiler units for at least as much money as the defendant received for the same number sold by it. We do not know what the evidence was. The master finds that the plaintiff, with the sales organization, good will, and selling momentum which it possessed prior to the opening of the defendant's factory branch, was capable of distributing burners in the Boston territory much more effectively and at much less expense than that at which they could be distributed by the defendant. The finding as to the number the plaintiff could have sold does not appear to have been based entirely upon the number the defendant actually sold, but, under the circumstances found, that number may well have been taken into account in determining the loss of sales by the plaintiff. Williston on Contracts (Rev. ed.) § 1406.

We think, however, that in making up the final decree the plaintiff's profits, amounting to $14,158.80, on oil contracts derived by it from the sale of the Marr burners should have been deducted from the $75,000 loss otherwise found to have been sustained by the plaintiff. It is expressly found that but for the acts of the defendant the plaintiff would never have engaged in installing the Marr burners, and there are other findings to the effect that the plaintiff's activity in installing and servicing Marr burners "represented no more than an effort on the part of the plaintiff to make full use of its service department at a time when its burner-selling department had been rendered unprofitable and unpromising as a result of acts of the defendant." From these findings it would seem that the plaintiff's profit on oil contracts in connection with Marr burners had resulted from the release of the energies of the plaintiff's organization brought about by the defendant's conduct and could not otherwise have been realized. At least it does not appear that this is not true. See *F. E. Atteaux & Co. Inc.* v. *Mechling Brothers Manuf. Co.* 245 Mass. 483, 499; *Vitagraph, Inc.* v. *Park Theatre Co. of Boston,* 249 Mass. 25, 34. The case therefore does not fall within the rule of *Olds* v. *Mapes-Reeve Construction Co.* 177 Mass. 41, and similar cases. The final decree should be modified in this respect and the necessary readjustments should be made in the interest.

There was no error in the denial of the defendant's motion to recommit. The only matters argued by the defendant in connection with this motion are the questions arising out of paragraphs in each of which recommittal is requested in order that the master may append brief, accurate and fair summaries of evidence. The only source of any right of a litigant in the Superior Court to a report by a master of summaries of evidence is found in the second paragraph of Rule 90 of the Superior Court (1932). The provisions of that paragraph relate to questions of law arising at the hearing before the master and determined by him in the course of his duty of hearing the case as master. Such questions are proper subjects of objections and exceptions

to his report, and the purpose of the rule is to secure the laying of a proper foundation in the report for such objections and exceptions. Typical of such questions are those arising upon rulings upon evidence made by the master during the hearings or other rulings relating to the conduct of the hearing. Included also are questions whether the evidence was sufficient to support a finding made by the master, although·as to questions of this kind the right to a summary is, by the terms of the rule, conditioned upon the selection or approval of a stenographer by the master before any evidence is introduced (a condition that does not appear to have been met in this case) and upon the furnishing to the master of the required transcript of the evidence. The rule requires the master to report only summaries of evidence under the conditions set forth. It is not a means by which a party can compel a master to report additional subsidiary facts. That matter commonly lies in the discretion of the court that appointed the master. *Pearson* v. *Mulloney*, 289 Mass. 508, 513. *MacLeod* v. *Davis*, 290 Mass. 335, 338. Nor does the rule enable a party to raise before the master questions of law decisive of the merits of the case that ought to be raised in court at the hearing on the merits and then to ask the master for summaries of the evidence relating to such matters in the hope thereby to bring before the court all the evidence in the case or all the evidence relating to selected issues. We have carefully examined every contention made by the defendant on its motion to recommit. Each falls outside of the rule for one or more of the reasons just pointed out.

The defendant's exception to the master's report founded on its objection to the exclusion of a letter from "counsel" to the two individuals who controlled the corporation that owned all the stock of the plaintiff cannot be sustained.[1]

---

[1] The following appeared in the master's report: "The defendant offered a letter from counsel to . . . [such individuals, written in 1932]. It was excluded. The defendant offered to show 'that advice of counsel . . . was taken by . . . [them] with regard to relations between what they proposed to do . . . [respecting the Marr burner] with the existing Nokol franchise; that they were told in substance that what they were going to do was or might be found to be in violation of the Nokol franchise, and that before undertaking that matter they should terminate the Nokol franchise in Boston; that

Whether these persons disregarded the advice of their counsel is of no importance. No other exception has been argued.

We think there was no error in the manner in which the interest was calculated in making up the final decree. It seems plain that the master did not include any interest on the round sum of $75,000 which he found represented the plaintiff's damages before deducting the sum of $14,158.80 for profit realized by the plaintiff on the oil business which it acquired from the sale of Marr burners. It was therefore within the power of the judge to add interest from the filing of the bill. *Young* v. *Winkley*, 191 Mass. 570, 575. *Royal Paper Box Co.* v. *Munro & Church Co.* 284 Mass. 446, 452. Interest is commonly allowed from the date of the writ in actions of contract on unliquidated claims. *Graustein* v. *H. P. Hood & Sons, Inc.* 293 Mass. 207, 222. *Fuller* v. *Lovell*, 304 Mass. 542, 548–549. And interest may be allowed in actions of tort in order that full compensation may be awarded. *Young* v. *New York, New Haven & Hartford Railroad*, 273 Mass. 567, 571, 572. *Royal Paper Box Co.* v. *Munro & Church Co.* 284 Mass. 446, 452. It was proper to allow interest in this suit. We are also of opinion that the added item of interest was rightly compounded, together with the sum found by the master, as of the date of the filing of the master's report. It is provided by G. L. (Ter. Ed.) c. 235, § 8, among other things, that when judgment is made up upon the report of a master interest shall be computed upon the "amount of the award . . . from the time when made to the time of making up the judgment," thus compounding any interest included in the master's report as of the date of the filing of the report. The statute announces a general principle applicable also to judgments made up upon an award of county commissioners, a committee or referees, the report of an auditor, the verdict of a jury, or the finding of a judge. See *Hawkes* v. *Lackey*, 207

---

without conferring with counsel after receiving that letter they disregarded his advice and went ahead and nominally hung on to the Nokol franchise until February, 1934.' This evidence was excluded and the defendant's objection noted." The defendant argued in its brief that this evidence should have been admitted on the question, whether the plaintiff came into court with clean hands. — REPORTER.

Mass. 424, 434.   In a case like the present one the decree rests upon the findings of the master and in substance is "made up upon" the "award," even though the judge did add an item of interest which the master had not included. We think the statute must be held to apply to the item so added.   It would be inconvenient and inconsistent if, every time the amount reported by a master, perhaps in a long account, were increased by adding or increasing some item by inference from the findings or by way of correction or of supplying an omission, interest had to be compounded under the statute as of the filing of the report on such items as remained unchanged, but had to be calculated to the date of decree without a rest on such items as had been added or on the amount of the increase in such items as had been increased.   This precise question was not passed upon in *Young* v. *Winkley,* 191 Mass. 570, 575, 576, since in that case the appealing defendant could not be injured by any failure to compound the item of interest, and so far as we know the question has never before been decided.

The result is that the interlocutory decrees appealed from are affirmed, and that the final decree, modified as hereinbefore set forth and by bringing the interest down to date, is affirmed with costs.

*Ordered accordingly.*