341 P.2d 928

**A. R. A. MANUFACTURING COMPANY, a corporation, Appellant,**

v.

**Dewey L. PIERCE and Rosamond S. Pierce, husband and wife, and Arctic Automotive Air Conditioning Company, Inc., a corporation, Appellees.**

No. 6428.

Supreme Court of Arizona.

July 9, 1959.

Conner & Jones, and A. O. Johnson, Tucson, for appellant.

May, Lesher & Dees, and Robert O. Lesher, Tucson, for appellees.

BERNSTEIN, Justice.

This is an action to recover damages for breach of a contract of exclusive distributorship. It arose by way of a counterclaim by appellees to a claim for moneys owing asserted by appellant (the validity of which was admitted at the trial), and comes to us on appeal from a judgment upon a jury verdict for appellees on their counterclaim.

Appellant, a manufacturer of automobile air conditioning units, conceded that, by written contract, it had granted to appellee Arctic an exclusive distributorship for the sale of appellant's product in the State of Arizona, effective from March 16 to December 14, 1955; and that on or about July 25, 1955, it mailed to dealers in Arizona, customers or prospective customers of Arctic, an "announcement" that "With the increasing demand brought on by competitive advertising of low prices for less effective units to the public, A.R.A. has decided to place its dealers in a strictly competitive position with such units pricewise," enclosing "revised prices" to dealers which, in fact, were the prices at which sales were made to Arctic. Appellant assigns as error: (1) the ruling of the trial court that it had breached the contract as a matter of law, relying on proof or offer of proof that the mailing to Ari-

zona dealers was a mistake, that it never sold (and, by implication, that it never meant to offer to sell) to Arizona dealers, but only to Texas and Oklahoma dealers, and that it corrected its mistake by a "Bulletin" dated August 2, 1955, stating that the new prices "were mailed to you *in error* and are not effective in the territory of Arizona"; (2) instructions concerning the computation of damages; (3) miscellaneous rulings related to the foregoing; and (4) failure to grant a new trial because of newly discovered evidence. We find none of the assignments meritorious.

First, we deem it unnecessary to decide whether appellant's July 25 "announcement" could be interpreted as something other than an offer to sell to Arctic customers. Whether it was or was not such an offer, an implicit promise of every exclusive distributorship agreement is that the manufacturer will do nothing to impair the efforts of the distributor to sell the manufacturer's product. See Buckley & Scott Utilities, Inc. v. Petroleum Heat & Power Co., 313 Mass. 498, 503, 48 N.E.2d 154, 157; cf. Arcoil Co. of Maryland v. Jacobson Mfg. Co., 7 N.J. Misc. 1024, 147 A. 739; Milton v. Hudson Sales Corporation, 152 Cal.App.2d 418, 313 P.2d 936. The corollary promise of the distributor party to such an agreement, established by Judge Cardozo's opinion in Wood v. Lucy, Lady Duff-Gordon, 222

N.Y. 88, 118 N.E. 214, of course, is that he will use his best efforts to promote the sale of the manufacturer's product. See, e. g., J. C. Millett Co. v. Park & Tilford Distillers Corp., D.C.N.D.Cal., 123 F.Supp. 484. In this case the manufacturer's promise was made explicit by the statement of the agreement that

> "* * * A.R.A. will endeavor to encourage all of our customers in the State of Arizona to patronize the facilities made available by Arctic in Phoenix and Tucson and to cooperate wholeheartedly for the material benefit and profit of both parties to the agreement."

The facts which are to be considered in connection with the July 25th announcement are that, prior to March, 1955, dealers in Arizona purchased directly from appellant; dealers in Texas and Oklahoma continued to purchase directly from appellant even after March, 1955, and were doing so in July and August, 1955, apparently at the prices recited in the July announcement; and the freight from appellant's location in Texas to Tucson was only about $10 per air conditioning unit. In these circumstances, we think the certain tendency of the announcement was to undermine the efforts of Arctic to sell appellant's product "for the mutual benefit and profit of *both* parties," contrary to appellant's promise "to encourage" appellant's former customers in Arizona "to

patronize the facilities made available by Arctic."

"Business contracts," we are reminded by the words of Mr. Justice Holmes, "must be construed with business sense, as they naturally would be understood by intelligent men of affairs." The Kronprinzessin Cecilie, 244 U.S. 12, 24, 37 S.Ct. 490, 492, 61 L.Ed. 960. Here, the business sense of the agreement was that appellant would rely on Arctic, and Arctic would undertake a corresponding obligation, to accomplish the efficient distribution of appellant's air conditioning units. That Arctic could not do if its customers were enticed or intrigued by the prospect of cheaper prices available elsewhere, cf. Checket-Columbia Co. v. Lipman, 201 Md. 494, 94 A.2d 433, 435, or if they were made explicitly aware that doing business with Arctic as an intermediary resulted in a higher market price than otherwise might prevail. Just so, in Arcoil Co. of Maryland v. Jacobson Mfg. Co., supra, 7 N.J. Misc. at page 1025, 147 A. at pages 739–740, it was said that

> "* * * The contract provision was that the defendant would assist the dealer in effectively promoting the sale of Arcoil oil burners. We think that under the contract the defendant owed it to the plaintiff not to assume a belittling attitude before the public toward dealers, distributors, and middlemen, and that the advertisements in

question might well be considered as ridiculing the middleman and discouraging the purchasing public from doing business through him. * * "

The testimony of one of Arctic's customers on the point aptly illustrates the demoralizing effect of appellant's conduct in this case. Robert H. Bowyer, Vice President of Bowyer Motor Company, testified that the reaction of his company to the July 25th announcement was as follows:

"I called up Mr. Pierce and told him we had fairly well projected what his cost was on what he was selling us, and apparently A.R.A. prices were different than what he was quoting to us, and if this were the case we would go into the refrigeration business ourselves rather than farm it out to him."

Thereafter, Bowyer did no business with Arctic "Until he [Pierce] got the price right," reducing the price per unit from about $535 to $465. In the circumstances, we do not think it was error to rule that the apparent tendency of appellant's conduct "to defeat the essential purpose of the parties" made it a material breach as a matter of law. See Helgar Corp. v. Warner's Features, Inc., 222 N.Y. 449, 453–454, 119 N.E. 113, 114; F. A. D. Andrea, Inc. v. Dodge, 3 Cir., 15 F.2d 1003, 1005; Crane v. Colonial Holding Corporation, Tex.Civ.App., 57 S.W.2d 316, 319.

Nor was it error to reject testimony that the mailing to Arizona dealers was a mistake and that the quoted prices were not intended to be, and were not, effective in Arizona. In the first place, such evidence would have been relevant only to mitigate damages. That the mailing was a mistake and that appellant's intentions were good could hardly alter its liability; bad faith might make the case more striking and involve the law of intentional tort, see Buckley & Scott Utilities, Inc. v. Petroleum Heat & Power Co., supra, 313 Mass. at pages 504–505, 48 N.E.2d at page 158, but appellant was responsible even for a negligent unintentional breach of its contract. See Cramer v. Lewes Sand Co., 16 Del.Ch. 66, 140 A. 803; cf. Anderson v. City Van & Storage Co., Ariz., 340 P.2d 566; Harzfeld's Inc. v. Otis Elevator Co., D.C.W.D.Mo., 114 F.Supp. 480. Secondly, for whatever purpose offered, the rejected testimony would have added nothing of substance once the August 2 corrective "Bulletin" was admitted in evidence. Similarly, appellant was not prejudiced by rejection of evidence (if, indeed, such evidence ever was properly offered) that appellant made no sales in Arizona in contravention of the agreement, for appellees never contended to the contrary. The testimony of one of the appellees, Dewey L. Pierce, that, as to sales by appellant, he had "heard rumors, but they won't

stand up under evidence," was elicited by appellant itself on cross-examination, pressing for "any evidence either direct or indirect" on the subject, and adds little, if any, appeal to appellant's contention in that regard.

We turn now to appellant's assignments concerning damages.

■ First, appellant's chief argument is that appellees failed to establish a causal connection between Arctic's loss and the breach of contract; that Arctic's drop in sales "right after July 25th" was occasioned by the normal seasonal trend in the business. It is a sufficient answer that there was evidence to the contrary, including the highly illustrative testimony of Bowyer, already referred to. And, moreover, even if appellant's explanation of a seasonal trend were given full credit, it would not explain Arctic's necessity to sell what units it did sell from its inventory at cost, rather than at a profit. We think there was ample evidence to support the verdict rendered with respect to "causal connection."

■ Second, appellant argues that the jury was erroneously instructed to award duplicate recovery. The court's basic instruction with respect to damages was that, if appellees suffered actual damage as a direct and proximate result of the breach of contract, a verdict should be returned "in an amount which will compensate them fairly for such damages as they have suffered as a direct result of the breach of contract and which should have reasonably [have] been foreseen by the parties." No other guidance was given the jury as to what elements might be considered in computing damages, except that it was told not to consider expenses incurred prior to March 16, 1955, salesmen's salaries or commissions and advertising or other promotional expenses except to the extent that such expenses benefitted appellant. Appellant complains that the trial judge refused to instruct that the jury should not consider any loss of profits, any loss of inventory value, or, in effect, any promotional expense.

■ Although the instructions probably should have explained more distinctly how damages might be measured and a precautionary word might have been spoken, although not requested, to avoid duplicate recovery, we perceive no error within the confines of appellant's assignments. The familiar aim of compensatory contract damages, the computation of which is hardly an exact science, see Grand Trunk Western R. Co. v. H. W. Nelson Co., 6 Cir., 116 F.2d 823, 838, is to yield the net amount of the losses caused and the gains prevented by the breach of contract, i. e., "The expected additions to the plaintiff's wealth and the actually resulting subtractions· therefrom." A.L.I., Restatement of Contracts § 329; 5 Corbin on Contracts § 1002. To

recover for "gains prevented," appellees were entitled to have the jury consider any loss of profits shown, or, alternatively, any loss in inventory value. Jacob v. Miner, 67 Ariz. 109, 191 P.2d 734; McNutt Oil & Refining Co. v. D'Ascoli, 79 Ariz. 28, 281 P.2d 966. To recover for an additional "loss" inflicted, appellees were entitled to have the jury consider any promotional expenditures which, as a result of appellant's breach, were wasted. See L. Albert & Son v. Armstrong Rubber Co., 2 Cir., 178 F.2d 182; A.L.I., Restatement of Contracts § 333; 5 Corbin on Contracts § 1031; 5 Williston, Contracts § 1363A (Rev.Ed.). While the subject is not free from difficulty, see Standard Machinery Co. v. Duncan Shaw Corp., 1 Cir., 208 F.2d 61, 63–64, such additional recovery, when justified, may be understood as similar to damages for destruction of good will. Cf. L. Albert & Son v. Armstrong Rubber Co., supra; Allen v. Elliott Reynolds Motor Co., 33 Tenn. App. 179, 230 S.W.2d 418. Moreover, in cautioning that, "as to those [promotional] expenses, if any, * * * which inure to the benefit of both parties, you should make a fair apportionment," the trial court may have adopted yet another acceptable point of view—that appellees were entitled to restitution for any benefit conferred on appellant. From whatever point of view, it was not error to refuse appellant's requested instructions, which, it may be noted, would have prevented any recovery by any practical means of measurement; and the jury was not misled to award double recovery.

Finally, we may turn to appellant's motion for a new trial on the grounds of newly discovered evidence. It is based essentially on the fact, stated by appellant's attorney, that a considerable amount of the advertising expense testified to by appellee Dewey L. Pierce, totaling some $1,500 for newspaper advertising, was for advertising which did not mention "A.R.A.," a fact which appellant could not ascertain in time to present during the course of the trial. At trial, Pierce said that he had included in the expenses compiled all advertising since Arctic's entire business was "A.R.A.," and, in response to a question on cross-examination as to whether Arctic's advertising mentioned A.R.A., Pierce said, "That's right." The impression thus may have been given that all or most of Arctic's advertising mentioned A.R.A., an impression which appellant seeks to correct on a new trial. We think that the ground presented for appellant's motion is too insubstantial to warrant our reversing the trial judge, who heard the witnesses and could judge the matter first hand, and whose judgment in the matter is to be respected. Granting a new trial is largely discretionary with the trial court, and we find no abuse of discretion in this case. Sharpensteen v. Sanguinetti, 33 Ariz. 110, 262 P.

609; Murphy v. Thompson, 70 Ariz. 250, 219 P.2d 334.

All other assignments of error have been considered and are disposed of by what is said hereinabove.

The judgment is affirmed.

PHELPS, C. J., and STRUCKMEYER, UDALL and JOHNSON, JJ., concur.