DONALD KASS *vs.* GEORGE H. TODD, JR.

Middlesex. April 7, 1972. — June 16, 1972.

Present: TAURO, C.J., SPIEGEL, REARDON, BRAUCHER, & HENNESSEY, JJ.

*Contract,* Building contract, Implied contract. *Damages,* Building contract, On quantum meruit. *Equity Pleading and Practice,* Master: recommittal, additional findings.

Where an owner of real estate contracted with a builder to construct a house on the owner's lot for a fixed sum and, as the house neared completion, refused without justification to make certain payments which were due under the contract and the builder, notwithstanding this breach, which a master found to be material, continued the work and submitted bills for the work done it was held that, since the builder neither abandoned the contract nor entered into a new contract, express or implied, for the fair value of the work, he could not recover on a quantum meruit but was limited to the amount due under the contract. [173–176]

BILL IN EQUITY filed in the Superior Court on January 30, 1969.

The suit was heard by *Linscott,* J., on a master's report.

*Leo J. Hession* for the plaintiff.
*Joel Rome* for the defendant.

SPIEGEL, J.   The plaintiff brought this bill in equity in the Superior Court to require the defendant, who had contracted to build a house for him in Natick, to obtain an occupancy permit, to turn on the sewage pumping station, and to deliver house and garage keys to him. He also asked that damages be assessed for costs (e.g. rent, storage) "occasioned by the . . . [defendant's] refusal to allow the . . . [plaintiff] to occupy the premises owned by the . . . [plaintiff]." The defendant filed a counterclaim alleging that he did "a major and substantial portion" of the work and that the plaintiff "failed . . . to make payments to the defendant as provided in . . . [the] agreement" and that the plaintiff

owes him the "fair and reasonable value" of labor performed and materials supplied, plus interest. The defendant (apparently alternatively by means of an account annexed) sought recovery for the balance due under the contract plus certain extras ordered by the plaintiff and furnished by the defendant, plus interest.

On June 16, 1969, the judge by interlocutory decree ordered the defendant to place in service and maintain the sewage pumping station and not to interfere with the operation of the pump until otherwise ordered by the court. The case was then referred to a master who made certain subsidiary and ultimate findings.

The plaintiff then filed two motions, one to strike the report and the other to recommit it for the purpose of having the master file a fair summary of the evidence and to make additional subsidary findings relating to certain specified ultimate findings. Both motions were denied.

An interlocutory decree was then entered confirming the master's report, and a final decree was entered adjudging that $15,525.58 (plus interest amounting to $1,849.59) was due from the plaintiff on the defendant's counterclaim, and ordering that the plaintiff pay the defendant this amount. The decree also contained the following: "The suit is otherwise dismissed." The plaintiff appealed from the final decree.

We summarize the master's relevant subsidiary findings. In the spring of 1968, the defendant owned a twenty-two lot subdivision in Natick. On May 10, 1968, the defendant conveyed lot number 4 of the subdivision to the plaintiff, and on May 13, 1968, the parties entered into a contract for the construction of a house on this lot. "At the time of the contract and discussions prior thereto the . . . [plaintiff] told the . . . [defendant] that he planned to sell his property in Connecticut, move his family to Cape Cod for the summer and house them in a 'house-trailer' . . . and that he wanted the house to be completed in time for his children to enter school in the Natick School System that coming fall."

The defendant told the plaintiff that he would try to "accommodate" him "but could not be certain that the house would be completed by that date." The defendant did tell the plaintiff "that he would try to have the house completed on or before Labor Day, 1968."

In mid-August, 1968, it was clear that the house would not be completed by Labor Day. Between mid-August, 1968, and November 26, 1968, the parties had "repeated discussions" about the completion date. Several times the defendant stated that he would try to have the house completed by a certain date. Each time he was unable to comply. It appears that the delays were caused by the repeated failures of subcontractors to show up on the job.

On December 2, 1968, the defendant submitted a bill to the plaintiff for $2,213.75 for work then being completed and eventually completed by nightfall of that day. On December 9, 1968, the defendant submitted a bill for $1,990.12 covering work in progress which was completed within forty-eight hours of the time the bill was given to the plaintiff, and the defendant requested payment of the December 2 bill. Bills were due and payable within seven days. The plaintiff stated that he would not pay the bill because the defendant took "too long to build the house." The defendant "reasonably believed" that the plaintiff did not intend "to pay him for work that had been done and for any outstanding charges" yet to be billed and advised the plaintiff that unless the "bills were paid . . . he would consider the contract ended and . . . he would proceed no further with any work on the building." On December 11, 1968, the defendant submitted a bill for $1,450 for work being completed on that day. On January 14, 1969, the defendant "obtained town approval of the sewage system." [1]

At the outset of the hearing the parties agreed that the bills paid by the plaintiff totaled $22,859.92.

On July 8, 1969, the master, accompanied by the at-

---

[1] This is ultimate finding number 3 in the master's report.

torneys for both parties, viewed the premises and observed that the construction was incomplete in some respects. The master was of the opinion that the work remaining to be done was negligible.

The master stated his ultimate findings as follows: "1. The parties entered into a contract for the construction of a house at number 8 Countryside Road, Natick, on May 13, 1968. 2. There was no contract or agreement between the parties as to the date that the house would be completed. . . . 6. The . . . [plaintiff] breached the construction contract by failing to make the payments to the . . . [defendant] as they became due. 7. The . . . [defendant] applied for and received a certificate of occupancy for the premises built by him for the . . . [plaintiff]. 8. The . . . [defendant] turned over the keys to the premises to the . . . [plaintiff]. 9. The breach of the contract by the . . . [plaintiff] justified the . . . [defendant] in his refusal to proceed further with the construction work, or proceed with anything else to make the premises habitable. 10. The failure on the part of the . . . [plaintiff] to pay the . . . [defendant] was a material breach of the contract. 11. On the date of the . . . [bill] the balance due from . . . [the plaintiff] on the contract plus extras charged by the defendant . . . is $7501.11. Since . . . [the defendant] agreed to build the house in accordance with the building requirements of the Town of Natick, I disallow an extra of $315.70 charged by . . . [the defendant] for installing additional Western Light Fir joists as required by the building inspector for the town. I also disallow an extra of $407 charged as an extra for increasing the width of the concrete garage foundation from 8″ to 10″ for the same reason. 12. If, as a matter of law, the failure to pay was a material breach of the contract which I find to be a fact, the . . . [defendant] is entitled to recover in quantum meruit for the fair value of the work, labor and materials supplied by him to the . . . [plaintiff]. 13. Above the land I find

that the fair value of the building is $38,385.50. 14. I find that the fair and reasonable value of the property in its state as it was on the date of the . . . [hearing] and as it was at the time the . . . [plaintiff] breached his contract was $38,385.50. 15. I find that if the . . . [defendant] is entitled to recover in quantum meruit rather than on the contract that the balance due the . . . [defendant] after deducting payments made on account and allowances given by the . . . [defendant] to the . . . [plaintiff] is $15,525.58. 16. If the . . . [defendant] is limited to the amount due under the contract, I find that the . . . [plaintiff] is indebted to the . . . [defendant] in the sum of $6,778.41. 17. I find that there is no liability on the part of the . . . [defendant] to pay for transportation of children to and from school or for storage for furniture, furnishings and fixtures of the . . . [plaintiff]. 18. The amount of my findings interest at the rate of 6% per annum from December 12, 1968 at which time the entire balance on the contract was due" (*sic*).

1. There was no error in the denial of the plaintiff's motion to recommit. No objections to the master's report were filed as required by Rule 90 of the Superior Court (1954). The motion to recommit is not a substitute for the filing of objections. Both procedures must be followed. See, e.g., *Sheppard Envelope Co.* v. *Arcade Malleable Iron Co.* 335 Mass. 180, 182, 184; *Lattuca* v. *Cusolito,* 343 Mass. 747, 748. Moreover, in so far as the plaintiff wanted the master to find additional subsidiary facts, the allowance or denial of the motion was discretionary with the judge (*Buckley & Scott Util. Inc.* v. *Petroleum Heat & Power Co.* 313 Mass. 498, 508, and cases cited), and no abuse of discretion has been shown.[2]

2. The more difficult question is whether the judge

---

[2] The plaintiff does not argue that he had a right to require the master to file a fair summary of the evidence. See *Buckley & Scott Util. Inc.* v. *Petroleum Heat & Power Co.* 313 Mass. 498, 507–508.

applied the correct measure of damages.[3]　The amount allowed by the court ($15,525.58) was the difference between what the master found to be the fair and reasonable value of the property ($38,385.50) and the payments made by the plaintiff under the contract ($22,859.92).　The plaintiff argues two points: first, that the defendant is not entitled to recover on a contract theory because he has not completely performed his obligations under the contract; second, assuming that the defendant is entitled to recover on a quantum meruit theory, his award may not exceed the stipulated contract price.　The plaintiff primarily relies on *Burke* v. *Coyne,* 188 Mass. 401, 404, and *Hooper* v. *Cuneo,* 227 Mass. 37, for the latter proposition.　The correct measure of damages on the quantum meruit theory, according to the plaintiff, should have been the proportion of the contract price which the work that the defendant did bears to the full amount of work for which the contract provided.

The circumstances of the instant case are to be contrasted with those of the *Burke* and *Hooper* cases where recovery by a builder on quantum meruit was limited to the contract price because the builder was at fault. The law protects the "expectation interest" of the person who has made a favorable contract and has abided by it.　See e.g. *Gillis* v. *Cobe,* 177 Mass. 584, 600.　Nordstrom & Woodland, Recovery by Building Contractor in Default, 20 Ohio St. L. J. 193, 214–219.　Where, however, the person who has made the favorable contract has defaulted, and rescission by the other party is warranted, ordinarily recovery can be had for the fair and reasonable value of labor and materials.　The party at fault should not be permitted to break the contract and yet retain the benefit of the contract by way of limiting his damages to the contract price.　*Bailey* v.

---

[3] With no objections or exceptions to the master's report, our review is limited to whether a proper decree was entered based on the master's findings.　See *Zuckernik* v. *Jordan Marsh Co.* 290 Mass. 151, 156; *DiMare* v. *Capaldi,* 336 Mass. 497, 501.

*Marden,* 193 Mass. 277, 279. *Philadelphia* v. *Tripple,*
230 Pa. 480, 488.

The defendant, on the other hand, argues that he may
recover on quantum meruit on the basis of a line of
cases beginning with *Fitzgerald* v. *Allen,* 128 Mass. 232,
234. There it was said: "The result of the cases is,
that, if the special contract is terminated by any means
other than the voluntary refusal of the plaintiff to per-
form the same upon his part, and the defendant has
actually received benefit from the labor performed and
materials furnished by the plaintiff, the value of such
labor and materials may be recovered upon a count upon
a *quantum meruit,* in which case the actual benefit which
the defendant receives from the plaintiff is to be paid
for, independently of the terms of the contract. The
contract itself is at an end. Its stipulations are as if
they had not existed." Accord, *Connolly* v. *Sullivan,*
173 Mass. 1, 5, and *Bailey* v. *Marden,* 193 Mass. 277,
279. In *Dalton* v. *American Ammonia Co.* 236 Mass.
105, 108, it was said: "When such a contract is broken
by the defendant without the plaintiff's fault, and the
latter, disaffirming the contract and considering it at
an end, sues for the value of the services rendered upon
a *quantum meruit,* he may recover the full value of his
services independent of the contract price, as if the spe-
cial agreement did not exist; and the contract price is
important only as bearing on the true value of the
services rendered." This appears to be consistent with
the balance of judicial opinion in other jurisdictions.
McCormick, Damages, § 166. Restatement: Contracts,
§ 347, comment c. Williston, Contracts (3d ed.) §§ 1459
and 1485. 98 C. J. S., Work and Labor, § 66 (4) (c) (b).

The instant case, however, is readily differentiated
from the cases cited by both the plaintiff and defendant.
After the plaintiff had broken the contract, the defendant
continued to perform, and, in fact, submitted bills for
work completed after the breach. The master found
that the amount of work remaining to be done was
negligible, and that the entire balance on the contract

was due. The defendant in his counterclaim alleges that he did a "substantial portion of the . . . work," and in his brief admits that the construction was "substantially complete, with only extremely minor finishing and corrections to be performed."

The facts of the instant case closely resemble the situation facing the court in *United States* v. *Americo Constr. Co. Inc.* 168 F. Supp. 760, 761–762 (D. Mass.), where it was held that a subcontractor could not recover on a quantum meruit but was restricted to the contract price. The court there rejected the plaintiff subcontractor's theory of recovery because "it did not abandon performance, nor did it enter into a new contract or implied contract for the fair value of its services as the price of not treating defendant's breach as total. . . . Even after the job was completed plaintiff recognized the contract, and sought payment thereunder."

We are of opinion that the holding in the *Americo Constr. Co.* case is sound. The defendant is limited to recovering the amount still due under the contract, plus certain extras. The master found this amount to be $6,778.41.

The final decree is reversed. A new decree is to be entered: (1) on the counterclaim adjudging that the plaintiff is indebted to the defendant in the sum of $6,778.41, with interest, and ordering the plaintiff to pay said sum to the defendant; and (2) dismissing the bill.

*So ordered.*