543 P.2d 468

**A. E. JENKINS and Wanda J. Jenkins, husband and wife, Appellants,**

v.

**Walter J. LUMLEY, Appellee.**

**No. 2 CA–CIV 1899.**

Court of Appeals of Arizona, Division 2.

Dec. 16, 1975.

Review Denied Feb. 10, 1976.

Scanlan, Schiesel & Jurkowitz by Fred T. Scanlan, Tucson, for appellants.

Jack A. Ettinger, Tucson, for appellee.

## OPINION

HOWARD, Chief Judge.

Arnold and Wanda Jenkins appeal from the dismissal of their cross-claim against Walter Lumley, their co-defendant in an action brought against them by United States Fidelity and Guarantee Company to recover on an indemnity agreement. Both defendants admitted liability to the surety, but each cross-claimed against the other on the ground that one of them was responsible for the losses of the other. Judgment was entered against Walter Lumley, Arnold and Wanda Jenkins, and Truck Stops, Inc. in the amount of $10,000 plus $2,500 for attorney's fees. Both cross-claims were dismissed. Only the Jenkins have appealed.

The basis for the Jenkins' claim against Lumley was an oral contract between them whereby it was agreed that the Jenkins would co-sign an indemnity agreement insuring the payment of fuel use taxes by Truck Stops, Inc. to the State, if and only if Lumley agreed that he would collect the taxes due on prior shipments before deliv-

ering any subsequent shipments of fuel. The court found this agreement to have been too indefinite to enforce. The reasons given for its conclusion are:

> "You have got an oral contract with just the very barest bones, and for me to rule between the cross-claims between the parties I have got to interpret or practically make a whole contract.

> The one defendant, Lumley, was supposed to collect the money. What was he supposed to do with it? Was he supposed to send it to the State or deliver it back to the parties; and once he delivered it back to the parties, was he supposed to insure that the money was sent to the State? And was he supposed to notify Mr. Jenkins of the fact that they were or were not paying him the gasoline taxes to deliver the gas? I think the situation is so vague and indefinite that I am unable to make a contract for the parties . . ."

■ We find the court erred in failing to find a contract here. Although the agreement itself may have left something to be desired in terms of what exactly was expected of Lumley, the course of performance of the contract indicated that the parties understood what was to be done. Lumley testified:

> "A. The procedure was I was to get a certified check made out to the state of Arizona, which I did.

> Q. So it was your understanding you were to collect the checks, keep them, and then give them back to send with the reports?

> A. Right."

There is no dispute regarding the circumstances of the formation of the contract. Truck Stops, Inc. wanted to sell diesel fuel. The only way it could be licensed to do so was to obtain a bond for fuel use taxes payable to the State in the event the taxes were not submitted. Lumley was the diesel fuel supplier. Jenkins owned a restaurant adjacent to the truck stop. Since Truck Stops, Inc. was not in good finan-

cial standing, the indemnity agreement necessary to obtain the bond had to be co-signed. Lumley suggested that he and Jenkins co-sign. Jenkins agreed but only after Lumley promised to collect the fuel use taxes.

The obvious purpose of the agreement between Lumley and Jenkins was to avoid the precise situation which occurred. Both knew the financial instability of Truck Stops, Inc. and Jenkins was willing to sign the indemnity agreement only if he was assured by Lumley that he would do what he could to see that the taxes were paid. This may well be a "bare bones" agreement as the court characterized it, but it is a perfectly enforceable contract because of the promise implied in such agreements that the promisor will use his best efforts to obtain the benefits conferred upon the promisee as a result of the agreement. See *A. R. A. Manufacturing Company v. Pierce,* 86 Ariz. 136, 341 P.2d 928 (1959); *Wood v. Lucy, Lady Duff-Gordon,* 222 N. Y. 88, 118 N.E. 214 (1917). In this case, Lumley impliedly promised Jenkins that he would use his best efforts to see that the bond was not forfeited, regardless of what the specific details of those efforts may have been.

■ In addition to this "bare bones" agreement, flesh was supplied by the subsequent conduct of the parties. Lumley indeed carried out his promise up to a point in late 1971 or early 1972 when he ceased performing his obligation under the contract. This conduct may be considered by the court in its determination of the existence of the contract. *Malcoff v. Coyier,* 14 Ariz.App. 524, 484 P.2d 1053 (1971). It was error for the court not to have found a contract on the basis of the undisputed facts in this case.

■ Appellant also contends that the court erred in admitting a certain document for the limited purpose of establishing that a Mrs. Batey, an employee of Arizona Trust Company, was on notice of the agreement between Jenkins and Lumley. Arizona Trust Company acted as United

States Fidelity and Guarantee Company's agent in procuring the indemnity agreement. Appellant was apparently seeking to show the substance of the Jenkins-Lumley agreement as contained in this document.

Assuming arguendo it was error not to admit the document, it was harmless since there was no real factual dispute between the parties as to the terms of their agreement. Appellee contended below that their agreement was subsequently changed, but the trial court never determined the truth of this contention which still remains an issue in this case.

The judgment is reversed and the case is remanded for further proceedings.

KRUCKER and HATHAWAY, JJ., concur.