**ORAL–X CORPORATION, a Utah Corporation, Plaintiff–Appellee, Cross–Appellant,**

v.

**FARNAM COMPANIES, INC., an Arizona Corporation, Defendant–Appellant, Cross–Appellee.**

**Nos. 89–4082, 89–4089.**

United States Court of Appeals, Tenth Circuit.

April 26, 1991.

Norman A. Fox, Jr. (William L. Summers, of Summers, Fox & McGinty, Cleveland, Ohio, with him on the briefs), of Summers, Fox & McGinty, Cleveland, Ohio, for defendant-appellant and cross-appellee.

Gary A. Weston (Jay R. Mohlman, and Richard K. Hincks, of Nielsen & Senior, Salt Lake City, Utah, with him on the brief), of Nielsen & Senior, Salt Lake City, Utah, for plaintiff-appellee and cross-appellant.

Before MOORE, TACHA and EBEL, Circuit Judges.

TACHA, Circuit Judge.

Plaintiff-appellee/cross-appellant Oral–X Corporation brought this action against defendant-appellant/cross-appellee Farnam Companies, Inc. to obtain the purchase price and royalties for product Farnam received from Oral–X and the royalties on orders cancelled by Farnam. Farnam counterclaimed, alleging the product breached express and implied warranties of merchantability. After a four-day bench trial, the district court concluded the product did not breach any warranties and entered a judgment of $52,603.84 in favor of Oral–X for the unpaid production costs and royalties on product actually shipped. The court refused to award royalties on the orders cancelled by Farnam.

On appeal, Farnam contends the district court erred by finding the product did not breach express and implied warranties. Farnam also argues the district court incorrectly awarded damages for royalties on the product shipped to Farnam but not sold. Finally, Farnam asserts the district court erred by failing to require Oral–X to return advance payments of royalties and partial payment of production costs. On cross-appeal, Oral–X claims an entitlement to royalties on the product ordered but not shipped to Farnam. We conclude the district court properly awarded damages for unpaid production costs and royalties on the product shipped by Oral–X. We disagree, however, with the district court's conclusion that Oral–X is not entitled to royalties on the product Farnam ordered but then cancelled. Thus, we affirm in part and reverse and remand in part.

Oral–X manufactures and distributes nutritional performance paste product packaged in plastic syringes for oral administration to horses. Farnam is the nation's largest seller of horse care products. Oral–X and Farnam executed a written manufacturing and non-exclusive marketing agreement on January 23, 1987. The parties agreed Oral–X would continue to manufacture, distribute, market, and sell the paste product. Oral–X also would manufacture the same product and place it in syringes bearing Farnam's labels to be resold by Farnam. Oral–X promised to sell the product to Farnam for an agreed cost of production plus a ten percent royalty on the net selling price. The agreement states the validity, interpretation, and performance of the contract are to be governed by Arizona law.

In early 1987, Farnam paid Oral–X $45,000 in advance royalties. Oral–X began manufacturing product for shipment to Farnam in March 1987. Oral–X continued to use essentially the same ingredients and procedures it had previously employed. Because the product contained bacteria, Oral–X used benzol alcohol and sorbic acid as preservatives to control bacteria growth. Oral–X informed Farnam by letter that the product contained these preservatives. Neither the type nor the level of bacteria found in the product are hazardous to the animal consuming or the person administering the product, and the bacteria does not reduce the product's effectiveness.

Oral–X made seven separate shipments to Farnam between April 1 and June 1, 1987. Farnam accepted these shipments and became obligated under the contract to pay $129,916.44 for the agreed production costs. Farnam has paid Oral–X $80,303.80, leaving an unpaid balance of $49,612.64.

During June 1987, Farnam became concerned that caps were popping off the ends of some syringes in its Omaha, Nebraska storage facility. Tests performed by Farnam's chemist revealed some inconsistency in the product and that it contained bacteria. Based on the test results, Farnam decided to discontinue marketing the product. Representatives of the two companies met in late June to discuss Farnam's concerns. The Oral–X representatives promised to test product samples to determine if the analysis of Farnam's chemist was correct. They also provided assurances they would do everything possible to conform the product to Farnam's desires.

Independent tests revealed the bacteria contained in the product was not harmful. Subsequently, it was determined Oral–X accidentally had failed to include sorbic acid in a small batch of the product. This batch had been placed in the syringes that later popped. Only one-fourth of one percent of the product shipped to Farnam did not contain sorbic acid. Oral–X credited Farnam for this defective portion of the shipment.

When Oral–X's president presented Farnam with the test results, he was assured Farnam would contact him soon with further directions. Farnam returned a portion of the product from its Omaha storage facility to Oral–X. Farnam directed Oral–X to reformulate the product according to Farnam's specifications. Shortly thereafter, however, Farnam requested Oral–X return the defective product to Farnam's Omaha facility, which it did.

In July 1987, Farnam cancelled several orders it had placed for the product. The cancelled orders were never shipped. On August 6, 1987, Oral–X received a letter from Farnam's attorney stating Farnam believed Oral–X had breached the January 23, 1987 contract and therefore Farnam was discontinuing business with Oral–X. Farnam then destroyed all the product stored in the Omaha facility.

Based on the testimony of an Oral–X officer, the district court concluded Farnam could have sold all the product contained in the seven shipments for $479,912.00. Therefore, Farnam was obligated to pay royalties of $47,991.20. Because Farnam had already paid $45,000 in advance royalties, its remaining obligation to Oral–X for unpaid royalties was $2,991.20. The court also found Farnam owed Oral–X $49,612.64 in unpaid production costs for the seven shipments. The court entered judgment for $52,603.84 against Farnam. The court

rejected Farnam's argument that the product from these seven shipments breached express and implied warranties of merchantability. The court also refused to award Oral–X royalties for the orders Farnam cancelled prior to shipment. According to the testimony offered by Oral–X, the product in these orders would have sold for $301,710.06.

The record contains substantial evidence indicating the product was safe and effective for the purposes for which it was marketed. Although a very small amount of the product delivered to Farnam was manufactured without sorbic acid, Oral–X cured this breach by crediting Farnam for the defective portion of the shipment. This slight variation did not constitute a material breach of contract excusing Farnam's performance. *See* J. White & R. Summers, Uniform Commercial Code § 10–2 (3d ed. 1988). The district court's conclusion that the product shipped by Oral–X did not breach any express warranties contained in the agreement is not clearly erroneous. *See Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Nor did the court err in concluding that, except for the batch manufactured without sorbic acid, the product did not breach the implied warranty of merchantability, Ariz.Rev.Stat. § 47–2314.

Citing language in the parties' agreement requiring Farnam to pay royalties on the product *sold,* Farnam contends it is not obligated to pay royalties on product it did not sell. The district court's award of damages for product shipped but not sold is consistent with fundamental principles of contract law. *See, e.g.,* Restatement of Contracts 2d § 344(a); J. Calamari & J. Perillo, Contracts § 14–4 (3d ed. 1987) (citing U.C.C. § 1–106; 5 Corbin, Contracts § 992; McCormick, Damages 561;

11 Williston, Contracts § 1338). Damages are awarded to place the non-breaching party in the same position he would have been in had the contract been performed. *See A.R.A. Mfg. Co. v. Pierce,* 86 Ariz. 136, 341 P.2d 928, 932 (1959); *Northern Ariz. Gas Serv. v. Petrolane Transp., Inc.,* 145 Ariz. 467, 702 P.2d 696, 707–08 (Ariz.App. 1984).

Here, Oral–X is entitled to recover the royalty payments it would have received if Farnam had performed the contract. Had Farnam performed its obligations, it would have sold the product and Oral–X would have received the appropriate royalties. The language of the contract does not dictate a different result. Rather, the contract clearly establishes Oral–X's expectation that the product Farnam ordered would be sold and royalties on that product would be paid. We conclude the district court did not misconstrue the contract or reform its terms when it awarded damages for product shipped but not sold.

The district court was correct, then, in ruling that Farnam was not entitled to the return of its advance payment of royalties and partial payment for the seven shipments of the product. Farnam is obligated to pay Oral–X $47,991.20 in royalties for the seven shipments it received, which exceeds its advance payment by $2,991.20. Farnam is also obligated to pay $49,612.64, the balance of the production costs for the non-defective product it received.

The district court refused to award damages for royalties on cancelled orders because of the uncertainty about whether the product actually would have been sold and what price would have been obtained.[1] However, it is well established that recovery for lost profits will not be denied merely because the amount is difficult to ascertain. *See Rancho Pescado, Inc. v. Northwestern Mut. Life Ins. Co.,* 140 Ariz. 174,

---

1. The court also speculated that Oral–X might be able to salvage and resell some of the product in the cancelled orders. Such conjecture is unwarranted under Ariz.Rev.Stat. § 47–2708(B), which provides for recovery of lost profits without regard to resale. *See* J. Calamari & J. Perillo, Contracts §§ 14–23, 14–27 at n. 87 (3d ed. 1987); J. White & R. Summers, Uniform Commercial Code § 7–8, 7–9, 7–10 (3d ed. 1988). Moreover, the transcript contains uncontradicted testimony indicating the product for the cancelled orders never was produced. Therefore, the only way to compensate Oral–X's expectation interest in the cancelled order is to award the lost profit, which in this case is the royalties.

680 P.2d 1235, 1245 (Ariz.App.1984); *Republic Nat'l Life Ins. Co. v. Red Lion Homes, Inc.*, 704 F.2d 484, 489 (10th Cir. 1983). We have previously stated the rule that:

> A person who has broken a contract will not be permitted to escape liability because of the lack of a perfect measure of the damages caused by his breach. A reasonable basis for computation and the best evidence obtainable under the circumstances of the case and which will enable the trier of the facts to arrive at a fairly approximate estimate of the loss is sufficient.

*A to Z Rental, Inc. v. Wilson*, 413 F.2d 899, 908 (10th Cir.1969).

The district court erred in concluding Oral–X was not entitled to recover royalties on $301,710.06 of orders cancelled by Farnam. We find the distinction the district court drew between the orders Oral–X shipped and those Farnam cancelled is without foundation for the purpose of determining Oral–X's expectation damages. An officer of Oral–X had calculated the royalties due on the product that was shipped to Farnam but not sold. This figure was based on the price Farnam received for the product it had sold. The court accepted this testimony when it awarded Oral–X damages for the product shipped but not sold. The same witness, using the same method of calculation, testified that Farnam's sale of the cancelled order would have brought $301,710.60. Moreover, Farnam conceded at oral argument it had distributed a catalog listing its product sale price.

We hold the court erred in refusing to award damages for these royalties because they are "speculative." The testimony the district court accepted indicates with sufficient certainty the amount of the royalties due on the goods ordered whether they were shipped or not. If Farnam had not breached the contract, it would have accepted the goods ordered and sold the product. Oral–X then would have received royalties on these sales. To place Oral–X in the same position it would have been if the contract had been performed, Oral–X

should receive additional damages for royalties lost on the cancelled orders. We therefore AFFIRM in part, REVERSE in part, and REMAND for entry of an order consistent with this opinion.